HARDING ACADEMY

v.

THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY.

Supreme Court of Tennessee, at Nashville.

Feb. 2, 2007 Session.

May 14, 2007.

George Arthur Dean (at trial), John C. Hayworth, John Lee Farringer, IV, and Robert J. Walker, Nashville, Tennessee, for the appellant, Harding Academy.

Karl F. Dean, Director of Law, and J. Brooks Fox, John L. Kennedy, Laura T. Kidwell, Megan A. Landreth, and Theodore G. Morrissey, Metropolitan Attorneys, for the appellee, Metropolitan Government of Nashville and Davidson County.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and CORNELIA A. CLARK and GARY R. WADE, JJ., joined.

The plaintiff applied for nine demolition permits, which the city initially issued. Two days later, however, the city revoked the permits based upon the "pending ordinance doctrine." At the time the plaintiff applied for the demolition permits, an application proposing a zoning change had been filed with the city's planning commission, but no action regarding the application had taken place other than the scheduling of a hearing before the city's historic zoning commission to discuss the proposal and the publishing of a notice to residents about such meeting. The city's historic zoning commission had not yet considered the zoning change application; consequently, the matter had not been referred to the city council for its consideration. We hold that the pending ordinance doctrine is inapplicable because the ordinance at issue was not sufficiently pending at the time the plaintiff applied for the demolition permits. The city's revocation of the permits was therefore improper. Because the city unlawfully revoked the demolition permits, the plaintiff is entitled to reissuance of the permits notwithstanding the subsequent enactment of a zoning ordinance that could prohibit demolition. The plaintiff must be given a reasonable opportunity to demolish the structures when the city reissues the permits. Accordingly, we affirm the judgment of the Court of Appeals as modified and remand this case to the trial court for the entry and enforcement of a decree ordering the city to reissue the revoked demolition permits to the plaintiff.

## I. Factual and Procedural Background

The plaintiff in this case, Harding Academy ("Harding"), is a private elementary and middle school that has its campus in the Belle Meade Links Triangle area of Nashville, Tennessee. The defendant is the Metropolitan Government of Nashville and Davidson County ("Metro"). In 1991, Harding began acquiring residential lots near its campus and had acquired eleven residential lots by January 2003. In February 2003, Harding asked Metro's Board of Zoning Appeals to grant recreation center status to its properties, which would allow Harding to maintain athletic fields on its properties. An appeal was filed by a neighborhood group challenging the inter-

pretation of the Director of Metro's Department of Codes Administration ("Codes Director") that use of the properties qualified as a "recreation center." In March 2003, the district's representative, Metro Councilwoman Lynn Williams, urged Harding to withdraw its application for recreation center status in an attempt to reach an amicable resolution of the dispute with the neighborhood group. Harding withdrew its application in March 2003, but no resolution was reached. On April 10, 2003, Councilwoman Williams filed with Metro's Planning Commission an application on behalf of the neighborhood to have the Belle Meade Links Triangle area declared a neighborhood conservation overlay district. On April 23, 2003, notice was sent advising property owners of a hearing scheduled for May 14, 2003, before the Historic Zoning Commission regarding the proposed historic conservation overlay. This notice is not part of the record.

On May 1, 2003, Harding applied to the Metro Department of Codes Administration for permits authorizing the demolition of nine structures on the residential lots Harding had purchased. On May 2, 2003, the Department of Codes Administration referred five of the nine permit requests to the Historic Zoning Commission for review, which requests were not acted upon by the Historic Zoning Commission. On May 6, 2003, the Codes Director issued Harding the nine demolition permits it had requested. Two days later, on May 8, 2003, the Codes Director notified Harding that he was revoking the demolition permits that were issued to Harding, explaining that revocation was pursuant to advice from Metro's Department of Law and was consistent with the "pending legislation doctrine." Harding timely appealed Metro's revocation of the demolition permits.

On May 14, 2003, the Historic Zoning Commission approved the proposed zoning change, and on May 20, 2003, the neighborhood conservation overlay ordinance for the Belle Meade Links Triangle passed its first reading before the Metro Council. After the historic conservation overlay application was filed and prior to the first reading of the ordinance, building permits for new construction in the same neighborhood came before the Historic Zoning Commission staff. These building permits were issued by Metro, and unlike the permits issued to Harding, they were not subsequently revoked.

On June 10, 2003, the Metro Board of Fire and Building Code Appeals heard Harding's appeal. The Codes Director testified that Chapter 16.04.120 of the Metro Code authorizes the Codes Director to revoke permits issued in error and that Metro's Department of Law informed him that issuance of the nine demolition permits to Harding was in error because there was legislation currently pending seeking to place an historic conservation overlay on the subject properties. The Metro Board of Fire and Building Code Appeals voted to uphold the revocation of the nine demolition permits issued to Harding. Harding filed a writ of certiorari seeking a ruling that Metro's revocation of the demolition permits "was in excess of its jurisdiction, illegal or arbitrary and capricious."

Meanwhile, on July 15, 2003, the historic conservation overlay ordinance passed its third and final reading before the Metro Council. The adopted ordinance states that it will "take effect immediately after its passage" and also states, "Effective Date: July 19, 2003." The facts recited above are undisputed by the parties. In enacting the historic conservation overlay ordinance, the parties agree that Metro complied with the applicable statutes.

On July 29, 2004, the trial court issued a "Memorandum and Order" reversing Met-

ro's decision. The trial court ordered the Codes Director to reissue the demolition permits to Harding, finding that the revocation of the permits based upon the "pending legislation doctrine" was arbitrary and capricious. The Court of Appeals affirmed the trial court's ruling under different reasoning. The intermediate appellate court concluded that the trial court erred in holding that Metro could not rely upon the "pending legislation doctrine" to revoke the demolition permits. The Court of Appeals, however, agreed with the trial court that Metro's revocation of the permits was exercised in an arbitrary and capricious manner. The Court of Appeals' opinion affirms the trial court's order that Metro's Department of Codes Administration reissue the demolition permits to Harding. However, a footnote in the Court of Appeals' opinion stating that "our holding should not be construed to mean that Harding Academy is now permitted to carry out its planned demolition of the structures on the property at issue" has caused confusion as to whether Harding may demolish the structures when the permits are reissued. We granted permission to appeal.

## II. Analysis

 At issue in this case is the propriety of Metro's decision to revoke the nine demolition permits that were issued to Harding. Judicial review of a decision by a local board of zoning appeals, an administrative body, is obtained by filing a petition for a common law writ of certiorari. *See* Tenn.Code Ann. § 27–8–101 (2000); *see also McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). This writ provides a limited scope of review by the courts. *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). Review of Metro's action in this case is limited to determining whether the board exceeded its jurisdiction, followed

an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn.Ct.App.2000). In proceedings involving a common law writ of certiorari, illegal, arbitrary, or fraudulent actions include: 1) the failure to follow the minimum standards of due process; 2) the misrepresentation or misapplication of legal standards; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards. *Hoover, Inc. v. Metro. Bd. of Zoning Appeals*, 924 S.W.2d 900, 905 (Tenn.Ct.App.1996). Because the basis for Metro's revocation of the demolition permits involves a question of law, we review the record de novo with no presumption of correctness given to Metro's decision to uphold the revocation of the permits. *Lafferty*, 46 S.W.3d at 759.

 Our review is limited to the record produced by the zoning board unless the reviewing court has permitted the introduction of additional evidence on the issue of whether the board exceeded its jurisdiction or acted illegally, capriciously, or arbitrarily. *Moore v. Metro. Bd. of Zoning Appeals*, 205 S.W.3d 429, 435 (Tenn.Ct.App.2006). We may not reweigh the evidence, examine the intrinsic correctness of the decision being reviewed, or substitute our judgment for that of the local officials. *Id.* If no evidence supports the action of the administrative board, then that action is arbitrary. *Demonbreun v. Metro. Bd. of Zoning Appeals*, 206 S.W.3d 42, 46 (Tenn.Ct.App.2005). "A denial of a zoning permit which meets all the requirements of the ordinance when there is no valid ground for denial is arbitrary and unreasonable." *Merritt v. Wilson County Bd. of Zoning Appeals*, 656 S.W.2d 846, 854 (Tenn.Ct.App.1983) (citing 101 C.J.S. *Zoning* § 224 (1958)).

Metro argues that the record before the Board of Zoning Appeals contains sufficient evidence to support its decision to revoke the nine demolition permits that had been issued to Harding. We disagree.

### Pending Ordinance Doctrine

■ The "pending legislation doctrine," also known as the "pending ordinance doctrine," provides that a building permit need not be issued if pending at the time of application is an amendment to a zoning ordinance that would prohibit the use of land for which the permit is sought. *See* 101A C.J.S. *Zoning & Land Planning* § 262 (2005). The pending ordinance doctrine permits a municipality to amend its zoning ordinances "without the threat of landowners racing to beat the clock by filing an application and thus obtaining vested rights under existing regulations." *Id.* Accordingly, the pending ordinance doctrine allows a municipality to refuse to issue a permit even if the permit application is made a considerable time before the enactment of the pending ordinance. *Id.* The ordinance, however, must be legally pending on the date of the permit application. *Id.* In addition, the municipality may not unreasonably or arbitrarily refuse or delay issuance of the permit. *Id.* Finally, although most cases that discuss the pending ordinance doctrine involve a municipality's refusal to issue a permit in the face of a pending ordinance, the pending ordinance doctrine also allows a municipality to revoke a permit it erroneously issued. *See, e.g., Sharrow v. City of Dania,* 83 So.2d 274, 275 (Fla.1955) (holding that the pending ordinance doctrine permitted the municipality to revoke an erroneously issued permit).

We applied the pending ordinance doctrine to a pending zoning ordinance in *State ex rel. SCA Chemical Waste Services, Inc. v. Konigsberg,* 636 S.W.2d 430, 436 (Tenn.1982). In *Konigsberg,* a company applied for a building permit three days after the city council had enacted a comprehensive zoning ordinance that was to become effective three months later. Application of the new zoning ordinance would have required the company to obtain a special permit to build such a facility. The company's application for a building permit was denied. We held that the local government had the authority to suspend the issuance of permits for construction pending the effective date of the new comprehensive zoning ordinance. *Id.* at 437.

In *Cherokee Country Club, Inc. v. City of Knoxville,* 152 S.W.3d 466, 470–71 (Tenn.2004), however, we held that the pending ordinance doctrine was inapplicable. In that case, a country club purchased certain real property with the intent to demolish a structure on that property to expand its facilities. The city passed an emergency ordinance in April 2000 providing that no demolition permit could be issued for a renewable period of 180 days for any property under review for a potential historic overlay. In February 2002, the club applied for and was denied a demolition permit based upon the emergency ordinance and a pending application for historic rezoning that was filed in January 2002. We stated that the pending ordinance analysis in *Konigsberg* did not apply because the emergency ordinance did not seek to impose a temporary moratorium or to preserve the status quo pending the implementation or consideration of a comprehensive zoning plan. *Id.* at 471. In addition, we noted in *Cherokee Country Club* that the emergency ordinance was "a zoning ordinance that was not enacted in accordance with the statutes requiring planning, public notice, and a public hearing." *Id.* at 474. We further observed that the emergency ordinance improperly "permanently pro-

hibited a use of property pending an *application to consider* a historic overlay designation." *Id.* We held that the emergency ordinance was invalid, and we ordered that the city issue a demolition permit to the country club. *Id.* at 479.

While both *Konigsberg* and *Cherokee Country Club* refer to the proper application of the pending ordinance doctrine in the context of a comprehensive zoning ordinance, we do not limit the application of the pending ordinance doctrine to such cases. We see no good reason to make a distinction between a comprehensive zoning ordinance and an historic zoning ordinance. To the contrary, the same considerations are applicable. Whether or not the historic zoning ordinance at issue falls within the definition of a comprehensive zoning ordinance, the municipality's interest in being able to work out the details of a zoning change free from potential violations of the pending ordinance is identical. Moreover, we are aware of no cases from other jurisdictions that make such a distinction. The issue in the present case, therefore, is not whether the pending ordinance doctrine is applicable to a case involving an historic zoning ordinance but whether the historic zoning ordinance was actually pending at the time Harding applied for the demolition permits.

Courts disagree about the point in time at which a zoning ordinance becomes "pending" for purposes of the pending ordinance doctrine. Some jurisdictions hold that for a zoning ordinance to be pending, the proposed change need not be introduced to the governing body for consideration provided the appropriate department of the city is actively pursuing it. *Villa at Greeley, Inc. v. Hopper,* 917 P.2d 350, 357 (Colo.Ct.App.1996) (citing 8 E. McQuillin, *Municipal Corporations* § 25.155 (3d ed.1983)). Other jurisdictions, however, have observed that "an ordinance is pend-

ing when the governing body proposes a new zoning ordinance, makes the proposal open to public inspection, and advertises that the proposal will be discussed at a forthcoming public meeting." 101A C.J.S. *Zoning & Land Planning* § 262 (citing *Casey v. Zoning Hearing Bd. of Warwick Twp.,* 459 Pa. 219, 328 A.2d 464 (Pa.1974)). In *City of Jackson, Mississippi v. Lakeland Lounge of Jackson, Inc.,* 800 F.Supp. 455, 464 (S.D.Miss.1992), *rev'd on other grounds,* 973 F.2d 1255 (5th Cir.1992), the United States District Court for the Southern District of Mississippi notes that the pending ordinance doctrine would not apply to a municipality's attempt to amend a zoning ordinance if the proposed amendments to the ordinance were still before the planning board and had not yet been considered by the city council or received public comment.

In *Konigsberg,* we cited to *Sherman v. Reavis,* 273 S.C. 542, 257 S.E.2d 735 (S.C. 1979), among other cases, in support of the application of the pending ordinance doctrine. 636 S.W.2d at 436. In *Sherman,* the pending rezoning legislation had been recommended in detail to the city council and had already reached "an advanced stage" of the statutory rezoning procedure. 257 S.E.2d at 736. The Supreme Court of South Carolina emphasized that an ordinance is not legally pending until "the governing body has resolved to consider *a particular scheme* of rezoning and has advertised to the public its intention to hold public hearings on the rezoning." *Id.* at 737–38 (citing *Casey,* 459 Pa. 219, 328 A.2d 464) (emphasis added). Moreover, the Pennsylvania authority upon which the *Sherman* court relied rejected the view that an ordinance could be considered pending when a governing body first announces its intention to consider rezoning and refers the matter to its zoning commission. *Casey,* 328 A.2d at 467; *see also Scott v. Greenville County,* 716 F.2d 1409,

1419 n. 10 (4th Cir.1983) (discussing *Sherman* and *Casey* ).

At the time Harding applied for the demolition permits on May 1, 2003, an application for a zoning change had been filed with Metro's Planning Commission. This application simply proposed that the Belle Meade Links Triangle area be declared an historic overlay district. No action regarding the zoning change application had taken place prior to Harding's demolition requests other than the scheduling of a hearing before the Historic Zoning Commission to discuss the proposal and the publishing of a notice to residents about such meeting. The Historic Zoning Commission had not yet considered the zoning change application; consequently, the matter had not been referred to the City Council for its consideration.

We emphasized in *Cherokee Country Club* that the emergency ordinance in that case improperly "prohibited a use of property pending an *application to consider* a historic overlay designation." 152 S.W.3d at 474. As we explained in *Cherokee Country Club,* the creation of an historic district pursuant to Tennessee Code Annotated section 13–7–405(a) and (b) requires an historic zoning commission to make written recommendations to the local legislative body. 152 S.W.3d at 475. Metro's Historic Zoning Commission had not taken this step at the time Harding applied for the demolition permits, and no proposed ordinance detailing a particular zoning scheme had been introduced before the Metro Council at that time. The actions that took place prior to Harding's requests for the demolition permits—Councilwoman Williams' filing of the zone change application form and the Historic Zoning Commission's notice of a public meeting regarding her proposal—do not establish a pending zoning ordinance because the Historic Zoning Commission had not yet made

its recommendation to the Metro Council. *See A.J. Aberman, Inc. v. City of New Kensington,* 377 Pa. 520, 105 A.2d 586, 590 (Pa.1954) (distinguishing another case, *Kline v. City of Harrisburg,* 362 Pa. 438, 68 A.2d 182 (Pa.1949), on the basis that "in that case, the planning commission had neither completed its report nor submitted its recommendations to council and, consequently, no zoning ordinance was pending"); *cf. Ropiy v. Hernandez,* 363 Ill. App.3d 47, 299 Ill.Dec. 710, 842 N.E.2d 747, 752–55 (Ill.App.Ct.2006) (noting that the permits at issue were properly denied under the pending ordinance doctrine because an amendatory zoning ordinance was introduced in the city council before the plaintiff completed purchase of the property).

██ In the present case, the Historic Zoning Commission did not recommend the historic conservation overlay designation to the Metro Council until *after* Harding applied for and was issued the demolition permits. Consequently, the ordinance in this case was not "pending." The zone change application filed with the Metro Planning Commission and the subsequent notice of a public hearing simply occurred too early in the historic zoning process to justify use of the pending ordinance doctrine to revoke Harding's permits. *See Scott,* 716 F.2d at 1419 n. 10 (noting that mere public announcement of city council's intention to reconsider zoning of area in which plaintiff proposed to build could not undermine plaintiff's entitlement to a permit since referral of matter to county zoning and planning commission did not take place until after plaintiff applied for the permit). Because there was no pending ordinance in this case, we hold that Metro did not have the authority pursuant to the pending ordinance doctrine to revoke the permits it had issued to Harding and

that Metro's revocation of the permits was therefore improper.

Because we conclude that the ordinance was not sufficiently "pending" to permit the application of the pending ordinance doctrine, we do not reach the issue of whether Metro's revocation of Harding's demolition permits was arbitrary and capricious with regard to other property owners who had applied for building permits during the same period. We must, however, address the footnote in the Court of Appeals' opinion suggesting Harding may not be permitted to carry out its planned demolition of the structures on the properties at issue even if Metro reissues the permits. The Court of Appeals reasoned that the reissuance of the permits could be governed by the newly enacted ordinance. We disagree.

*Vested Rights*

▮ The general rule is that the mere issuance of a permit does not result in any right to protection from a subsequent zoning change. *See Schneider v. Lazarov,* 216 Tenn. 1, 390 S.W.2d 197, 200 (Tenn.1965). A municipality may revoke permission for a land use repugnant to a pending and later enacted zoning ordinance, despite the fact that the application for the proposed use conformed to existing regulations, as long as the permit holder has not relied upon the permit to his substantial detriment. *See Howe Realty Co. v. City of Nashville,* 176 Tenn. 405, 141 S.W.2d 904, 906–07 (Tenn.1940); *see also Cline v. City of Boulder,* 168 Colo. 112, 450 P.2d 335, 338 (Colo.1969) (citing 8 McQuillin *Municipal Corporations* § 25.156 (3d ed.1965)). Prior to Metro's revocation of the demolition permits, which occurred two days after the permits were issued, Harding did not spend a substantial sum of money in reliance on the permits. Due to Harding's lack of substantial expenditures,

Harding concedes that it does not have any vested rights in the demolition permits it initially obtained. *See Konigsberg,* 636 S.W.2d at 437 (stating that rights under an existing zoning ordinance do not vest until "substantial construction or substantial liabilities are incurred relating directly to construction"); *Schneider,* 390 S.W.2d at 201 (noting that an amendment to an ordinance could authorize the recall of a building permit if no construction had been commenced and that in this situation the permittee had no vested right if he did not begin construction or incur liabilities or expenses).

If, however, a municipality has acted arbitrarily, wrongly, or in bad faith with regard to a permit applicant, courts have held that a subsequent zoning ordinance may not be applied retroactively. *See* Roland F. Chase, Annotation, *Retroactive Effect of Zoning Regulation, in Absence of Saving Clause, on Pending Application for Building Permit,* 50 A.L.R.3d 596, § 13 (1973, Supp.2006) (stating that a number of courts have held that the arbitrary, unreasonable, or wrongful delay or refusal to issue a permit entitles the applicant to receive a permit, notwithstanding the subsequent enactment of a prohibitory zoning ordinance). We have concluded that the pending ordinance doctrine did not provide a proper basis for the revocation of the permits in this case and that Metro's revocation of the permits was therefore unlawful. Metro's unlawful revocation of the demolition permits prevented Harding from acquiring vested rights. Consequently, Metro cannot take advantage of its unlawful conduct. *See Phillips Petroleum Co. v. City of Park Ridge,* 16 Ill. App.2d 555, 149 N.E.2d 344, 350 (Ill.App. Ct.1958) (observing that municipality could not keep plaintiff from using permit municipality had illegally refused to issue when the reason plaintiff had not acquired any vested rights was because plaintiff was

prevented from doing so due to the municipality's invalid act). We conclude that under the facts of this case it would be unjust to order that Metro reissue the demolition permits to Harding and then not allow Harding to rely on those permits to demolish the nine structures. Accordingly, we hold that Harding must be given a reasonable opportunity to demolish the structures when Metro reissues the permits.

### III. Conclusion

We hold that the pending ordinance doctrine is inapplicable in this case because the ordinance at issue was not sufficiently pending at the time Harding applied for the demolition permits and that Metro's revocation of the permits was therefore unlawful. Accordingly, we affirm the judgment of the Court of Appeals and remand this case to the trial court for the entry and enforcement of a decree ordering Metro to reissue to Harding the nine revoked demolition permits. Costs of this appeal are taxed to the Metropolitan Government of Nashville and Davidson County, for which execution may issue if necessary.