# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 6, 2011 Session

## NASHVILLE ENTERTAINMENT, INC. v. METROPOLITAN SEXUALLY ORIENTED BUSINESS LICENSING BOARD

**Appeal from the Circuit Court for Davidson County**
**No. 09C-3975      Amanda McClendon, Judge**

---

**No. M2011-00958-COA-R3-CV - Filed April 18, 2012**

---

A sexually oriented business appeals from the trial court's denial of relief sought in a common law petition for writ of certiorari for review of the Metropolitan Sexually Oriented Business Licensing Board's decision finding the business in violation of ordinances governing sexually oriented businesses and for which it imposed a 31-day suspension of its license. Finding that the Board did not act arbitrarily or capriciously, that the Board's decision was supported by substantial and material evidence, and that the business's due process rights were not violated, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

R. Price Harris, Memphis, Tennessee, for the appellant, Nashville Entertainment, Inc.

William Michael Safley, Deputy Director of the Department of Law of the Metropolitan Government of Nashville and Davidson County, J. Brooks Fox, and Christopher M. Lackey, Assistant Metropolitan Attorneys, for the appellee, Metropolitan Sexually Oriented Business Licensing Board.

## OPINION

The appellant, Nashville Entertainment, Inc.,was licensed by the Metropolitan Sexually Oriented Business Licensing Board to operate a sexually oriented business in Nashville, Tennessee in 2009, under the name Christie's Cabaret. In June of 2009, the estranged and obviously vindictive husband of Entertainer #1090, who performed at Christie's Cabaret, hired a private investigator, Steven Jackson, to solicit services from

Entertainer #1090 while she performed at Christie's Cabaret. On June 7, 2009, while dutifully conducting his private investigator services at the direction of his client, Mr. Jackson received three "lap dances" from Entertainer #1090, who was still married to his client. Mr. Jackson paid $40 for each lap dance and provided a tip of $10 as well. Mr. Jackson returned to Christie's Cabaret on July 3, 2009, with an assistant, Ms. Jamie Martin, who made a video recording of Entertainer #1090 giving Mr. Jackson yet another lap dance, his fourth, from Entertainer #1090. Ms. Martin also received a "lap dance" from a second performer, Entertainer #25, on July 3, 2009.

Subsequently, Christine Gibson, the Compliance Inspector for the Metropolitan Sexually Oriented Business Licensing Board, received the report Mr. Jackson provided to his client and the video recording of the lap dances Jackson and Ms. Martin received from Entertainer #25 and Entertainer #1090 at Christie's Cabaret in June and July of 2009.[1] Thereafter, Ms. Gibson prepared a summary highlighting the purported violations and submitted the information to the Metropolitan Sexually Oriented Business Licensing Board (hereinafter "the Board").

The Board subsequently issued two citations to Nashville Entertainment for violations of the Metropolitan Code of Laws. One was for violations of Chapter 6.54.140.C, which prohibits physical contact between customers and entertainers. The other was for violations of Chapter 6.54.130.A, which states that the operator of an adult business is responsible for the conduct of all entertainers while on licensed premises, and that "any act or omission of any entertainer constituting a violation of the provisions of this chapter shall be deemed the act or omission of the operator for purposes of determining whether the operator's license shall be revoked, suspended, renewed, or a penalty assessed." Citations were also issued against Entertainer #25 and Entertainer #1090.

The Board held a hearing on the citations issued against Nashville Entertainment and the entertainers on November 11, 2009. The first portion of the hearing dealt with the citations against Entertainer #1090 and Entertainer #25. At the conclusion, the Board voted to suspend the entertainers' licenses for five days each.[2] The second portion dealt with the citation against Nashville Entertainment. Nashville Entertainment was represented by counsel

___

[1] It is unclear from the record exactly how Ms. Gibson became aware of the alleged violations. Mr. Jackson, the private investigator, stated that he turned his report over to the ex-husband of Entertainer #1090, his client, but does not state that he gave his reports to Ms. Gibson. Ms. Gibson does not state how the reports came into her possession.

[2] Entertainer #1090 had received citations for violations on two separate days, however, the Board voted to consolidate the two violations into one in order to reduce her suspension time. The Entertainers did not appeal the Board's decision and they are not at issue in this appeal.

at the hearing. At the start of the hearing, counsel for Nashville Entertainment made a motion to dismiss on the ground that a private citizen served as the investigator for the offenses and an independent investigation was not performed by a Metro Codes inspector. The Board denied the motion. Entertainer #1090 and Mr. Jackson then testified concerning the lap dances that occurred at Christie's Cabaret on June 7 and July 3, 2009.[3] Following their testimony, the packet of reports prepared by Christine Gibson, the Compliance Inspector for the Board, was admitted into evidence by reference, to which counsel for Nashville Entertainment made no objection.[4] At the conclusion of the hearing, the Board found Nashville Entertainment in violation of Chapter 6.54.140.C of the Metropolitan Code of Laws and suspended its license for five days and for thirty-one days for two violations (one for each day on which the alleged conduct occurred), which would run concurrently.

On November 12, 2009, Nashville Entertainment filed a petition for common law writ of certiorari in the Circuit Court for Davidson County seeking judicial review of the Board's decision. The court granted the writ and the record was filed by the Board. Pursuant to an agreed order, a hearing occurred on March 22, 2011. On March 24, 2011, the trial court issued its order finding that the Board's decision was not unlawful, that there was material evidence in the record to support the Board's decision, that the Board did not act arbitrarily or capriciously, and that the Board did not violate Nashville Entertainment's due process rights. For these reasons, the circuit court denied the relief sought in the petition. This appeal by Nashville Entertainment followed.

### ANALYSIS

On appeal, Nashville Entertainment contends that the trial court abused its discretion in denying it the relief sought in the petition for common law writ of certiorari.[5] "Review under a common law writ of certiorari is limited to 'whether the inferior board or tribunal has exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision.'" *Entertainer 118 v. Metro. Sexually Oriented Bus. Licensing Bd.*, No. M2008-01994-COA-R3-CV, 2009 WL 2486195 (Tenn. Ct. App. Aug. 14, 2009) (citing *Harding Acad. v. Metro. Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d 359, 363 (Tenn. 2007)). The reviewing court cannot (1)

---

[3]Both witnesses also testified during the hearing on the citations against the entertainers.

[4]This packet included the videotape of the lap dances, which occurred on July 3, 2009, which Mr. Jackson authenticated during the first portion of the hearing.

[5]It was stated at oral argument that Christie's Cabaret is currently closed, which counsel for Nashville Entertainment acknowledged, however, counsel stated that the business may reopen at which time the suspension would be enforced. Therefore, the issues in this appeal are not moot.

inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute its judgment for that of the lower tribunal. *Id.* (citing *Harding Acad.*, 222 S.W.3d at 363). This court's review of the trial court's denial of a petition for common law writ of certiorari is "no broader or more comprehensive than that of the trial court." *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 276–77 (Tenn. 1980).

Nashville Entertainment makes several arguments that the trial court erred in its decision to deny relief. First, it argues that the trial court did not conduct a thorough review; however, it cites no authority for this proposition nor does it point to anything in the record supporting this contention. Rather, Nashville Entertainment merely states in its brief that "there is no evidence" that the trial court did perform a thorough review and that the trial court's order was "short." We find no merit to this argument.[6]

Nashville Entertainment next argues that the Board's actions were arbitrary and capricious. Nashville Entertainment argues that the Board violated the provisions of the Metropolitan Code of Laws when issuing a punishment against Entertainer #1090, but then the Board "used the ordinances as a shield when dealing with [Nashville Entertainment]." We find no correlation between the actions taken during the decision of what punishment to levy against Entertainer #1090 and whether the Board acted arbitrarily and capriciously when it found Nashville Entertainment violated the Metropolitan Code of Laws. In fact, we find nothing to indicate that the Board acted arbitrarily and capriciously in finding Nashville Entertainment violated Chapter 6.54.140.C of the Metropolitan Code of Laws and further find that the Board's decision was supported by material evidence. Chapter 6.54.140.C provides that:

---

[6]Nashville Entertainment also argues that it is entitled to a trial de novo. We note that an Agreed Order by the parties stated that the matter would be heard by oral argument. We further note that the authority cited by Nashville Entertainment in its brief for this proposition deals with a statutory writ of certiorari and not a common law writ of certiorari. In fact, one case cited by Appellant, clearly explains this distinction:

> "It is statutory *certiorari* which will issue in this case, to the end that the case may be tried again upon its merits in the circuit court, and not the common-law writ of *certiorari*, which opens for review merely the legality of the action of the inferior tribunal."

*Ewin v. Richardson*, 382 S.W.2d 532, 534 (Tenn. 1964) (quoting *Jones v. State ex rel Juvenile Court*, 201 S.W. 760 (Tenn. 1918) (internal citations omitted)). *See also State v. Lane*, 254 S.W.3d 349, 354 n.4 (Tenn. 2008) (quoting *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987)) ("[T]he common-law writ 'does not ordinarily extend to a redetermination of the facts found by the administrative body'; whereas, the statutory writ generally allows for a trial de novo.").

No customer shall be permitted to have any physical contact with any entertainer on the licensed premises while the entertainer is engaged in a performance of live sexually oriented entertainment. All performances of live sexually oriented entertainment shall only occur upon a stage of at least eighteen inches above the immediate floor level and removed at least three feet from the nearest customer.

Further, the Metropolitan Code of Laws establishes that a sexually oriented business is responsible for the actions of its entertainers stating:

An operator is responsible for the conduct of all entertainers while on the licensed premises and any act or omission of any entertainer constituting a violation of the provisions of this chapter shall be deemed the act or omission of the operator for purposes of determining whether the operator's license shall be revoked, suspended, renewed, or a penalty assessed subject to the limits described in Section 6.54.150(E).

M.C.L. § 6.54.130.A.

At the hearing, both the private investigator, Steven Jackson, and Entertainer #1090 testified that the "lap dances" were performed at Christie's Cabaret on the specified dates, which provides more than ample evidence for a finding that a violation of the above stated provisions occurred. Further, the packet of reports of Ms. Gibson and Mr. Jackson, which provided additional details regarding the incidents, were incorporated by reference at the second hearing.[7] Based upon this, the trial court correctly found that the Board did not act arbitrarily or capriciously and that there was material evidence to support its decision.

Lastly, Nashville Entertainment makes a conclusory argument that its due process rights were violated in some way by the procedures of the Board. The basis for this argument is its contention that the process for citations is "flawed" and that in this case the Compliance Inspector for the Board was not the one who witnessed the activity that gave rise to the citations. We find no merit to this argument because Mr. Jackson and Entertainer #1090 both

---

[7]To the extent that Nashville Entertainment argues that this incorporation by reference violated its rights, it cites to no authority for this and we note that counsel for Nashville Entertainment made no objection at the hearing when this packet was submitted. We also believe that even if the reports were not submitted, there was ample testimony to support the Board's decision. We further note that the Tennessee Rules of Evidence do not specifically apply to administrative hearings. *Robertson v. Tennessee Bd. of Soc. Worker Certification & Licensure*, 227 S.W.3d 7, 14 (Tenn. 2007) (citing *Roberts v. Traughber*, 844 S.W.2d 192, 196 (Tenn. Ct. App.1991)).

testified at the hearing and their testimony was unrefuted. Furthermore, counsel for Nashville Entertainment was provided an opportunity to cross-examine the witnesses and make closing remarks. Accordingly, the trial court correctly found that Nashville Entertainment's due process rights were not violated.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Nashville Entertainment, Inc.

_____
FRANK G. CLEMENT, JR., JUDGE