IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 19, 2017 Session

## MICHAEL COBBLE, ET AL. v. GREENE COUNTY, TENNESSEE, ET AL.

Appeal from the Chancery Court for Greene County
No. 2014-0130    Douglas T. Jenkins, Chancellor

_____

No. E2017-00896-COA-R3-CV
_____

This appeal arises from a dispute over the grant of a zoning variance. Earl Scott Moore and Joetta Moore ("the Moores," collectively) applied for a variance in order to build a carport at their home. The Moores' neighbors, Michael Cobble and Lora Cobble ("the Cobbles," collectively) opposed the requested variance. The Greene County Board of Zoning Appeals ("the BZA") rejected the Moores' application. The Moores submitted a second application, this time reducing their request by seven feet so as not to protrude into a public right-of-way. The BZA granted the Moores' application for a variance. The Cobbles filed a petition for common law writ of certiorari in the Chancery Court for Greene County ("the Trial Court"). The Trial Court concluded that material evidence supported the BZA's decision to grant the variance and dismissed the Cobbles' petition. The Cobbles appealed to this Court. We affirm the Trial Court in its declining to hold that res judicata barred the Moores' second application for a variance. We hold further that, because the Moore property is not distinguishable in any meaningful way, the BZA's decision to grant a variance was not supported by material evidence. We affirm, in part, and reverse, in part, the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Michael Cobble and Lora Cobble, pro se appellants.

Roger A. Woolsey, Greeneville, Tennessee, for the appellees, Greene County Board of Zoning Appeals and Greene County, Tennessee.

Earl Scott Moore and Joetta Moore, pro se appellees.[1]

## OPINION

## Background

The Moores and Cobbles are neighbors in a Greene County, Tennessee subdivision called Mountain View Terrace. Mountain View Terrace was subdivided in the 1960s and consists of terraced lots on hills. The neighborhood predates the 1984 Greene County Zoning Resolution, which laid out the restrictions giving rise to the issues in this case. The Moores' residence is zoned R-1. In December 2013, the Moores began erecting a prefabricated aluminum carport on the front right side of their property. This was in contravention of the Zoning Resolution which required that portion of the property to be open space. When the Moores realized they were violating the zoning ordinance, they halted work and applied for a variance for front-yard and side-yard setbacks. On January 22, 2014, the BZA held a public hearing on the Moores' application. The staff recommended approving the variance. However, the BZA voted down the application.

Undaunted, the Moores filed a second application for a variance in February 2014. The Moores requested the same relief except with one key difference: this time, they requested seven less feet on the setback, which if granted would not put them on the public right-of-way. The second application was heard by the BZA on March 26, 2014. The Moores' neighbors, the Cobbles, attended the hearing and vigorously opposed granting the variance. Earl Scott Moore described why he wanted the carport: "I put that carport up because I work out of town four days out of the week, and my wife's at home and I'm trying to get her something so she can go out there in the vehicle without sitting out there for thirty minutes, defrosting and keeping her out of the rain." Mr. Moore, who has a garage already, addressed the fact that he owns six cars as follows: "I don't think it is any of his business. Because, I got tags on all six vehicles. I got insurance on all six vehicles, and I drive all six vehicles -- not at the same time, but I drive whenever I want to." The minutes of the second hearing reflect the following:

> **Case 1: Review and consider request by Earl Scott and Joetta Moore ("applicants") for a variance on front and right side yard setback requirements as required by the Greene County Zoning located on 109 Cutshall Avenue, Tax Map 122H, Group A, Parcel 025.00.**
>
> The applicants requested a 27 foot front yard variance and an 8 foot side yard setback so they could erect an aluminum carport. Building Official

---

[1] The Moores submitted a brief concurring with the brief submitted by the BZA and Greene County.

Tim Tweed explained the history of the variance request, which was denied previously at the January 22, 2014 meeting, and detailed how the applicants had made changes to their proposed project. He also passed around pictures of the property.

Planner Ross Phillips read the following staff recommendation: "Staff reviewed the application and completed a site visit to the subject property. The subject property has a significant slope on the left side and borders an undeveloped street (Decatur Street). The rear of the property is challenged with exceptional topographical conditions. There are other similar lots of record within the subdivision that are also challenged by similar sloped and topographical conditions. The combination of slope, topography, and increased left side yard setbacks due to the subject property being a corner lot, would make it difficult to locate the carport in this area. The owner would face an exceptional practical difficulty in locating the aluminum carport on the right/front area of the property while meeting the minimum front and right side yard setback requirements of the Zoning District. Allowing placement of the carport would be in characteristic with the other lot of record properties in the area. Staff finds relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning ordinance.

Staff recommends approval of the variance request based on the above findings and the requested variance meeting the provisions of Article X, Section 1004.3."

Tim Tweed then explained that Decatur Street is a "paper street" that constrains the building alternatives on the property. The applicants were given an opportunity to speak and deferred. [Michael] and [Lora] Cobble, the neighbors adjoining the side property line at issue, detailed several reasons they believed the variance was inappropriate. [Michael] Cobble stated the variance had been denied the last time because it would decrease property values and would set a precedent that structures, even permanent structures, could be built right up to the property line. He also explained that he had asked for a copy of the last meeting's minutes but had not received them. Tim Tweed and Roger Woolsey, County Attorney, later explained that conditions could be placed on any granted variance such as prohibiting permanent structures and that minutes were not distributed before they had been signed at the next meeting.

[Lora] Cobble noted that the purpose of the Zoning Ordinance was to ensure light, space, and safety but that granting the variance would block the view of the mountains from her property and cause a fire hazard. She went on to state that, although the lot at issue had topographical constraints, that the hardship was created by the applicants and that granting the variance would decrease her property value. She pointed out that the applicants should consider alternatives and posed the question of what is the minimum variance necessary.

Earl Scott explained the history of his property and relationship with the Cobbles. He decided to build a fence for privacy and to end the controversy with the Cobbles. He admitted he should have consulted the Building Official before first starting to erect the carport in November but disputed the contention that the aluminum carport posed any fire hazard.

Roger Woolsey read from page 2 of the Zoning Ordinance to explain its purpose and from page 68 to explain the factors for the variance decision. He advised the Board members to consider all the factors, be consistent, and that there would always be a potential for liability but that the members should do their best when making any decision.

Tim Tweed explained the neighborhood containing the subject property was laid out before zoning and that that was why the lots were only 50 feet wide. [Michael] Cobble asked whether a fence was a "structure" under the Zoning Ordinance and Tim Tweed explained that it was not. There was a lengthy discussion about the fence the applicants had erected before Roger Woolsey reminded everyone that the fence was not presently at issue.

Charles G'Fellers made a motion, seconded by Zak Neas, to follow the staff recommendation and grant the variance with the condition that only a freestanding carport with no permanent foundation and no walls could be placed in the area of the variance. Zak Neas explained the fire concern was so that a fire truck could get between the houses and pointed out that the Cobbles garage may be violating the side yard setback. The motion was read again for clarification before being passed unanimously.

In May 2014, the Cobbles filed a petition for writ of certiorari in the Trial Court challenging the BZA's grant of the variance. This case then underwent a drawn out period with a winding procedural history that delayed resolution on the merits for some time. The writ of certiorari on the Cobbles' petition was not issued until July 2016. The Trial Court conducted a hearing on the Cobbles' petition in November 2016.

-4-

In April 2017, the Trial Court entered its final judgment in which it affirmed the decision of the BZA's granting the variance sought by the Moores. In its final judgment, the Trial Court stated as follows:

1. Pursuant to the authority of powers granted to the Board of Zoning Appeals in T.C.A § 13-7-207(3), the Board of Zoning Appeals has the obligation to "*where by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the enactment of the zoning regulation, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under this part and part 3 of this chapter would result in peculiar and exceptional practical difficulties to or exception or undue hardship upon the owner of such property,*" to authorize, upon an appeal relating to the property, a variance from such strict application so as to relieve such difficulties or hardship; provided, that such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance.

II. The Board of Zoning Appeals pursuant to the zoning ordinance may in appropriate cases and subject to the principles, standards, rules, conditions and safeguards set forth in the ordinance make special exceptions to the terms of the zoning regulations in harmony with their general purpose and intent pursuant to T.C.A. 14-7-206. The chief legislative body may also authorize the board of zoning appeals to interpret the zoning maps and pass upon disputed questions of lot lines or district boundary lines or similar questions as they arise in the administration of the zoning regulations.

III. Moore filed a variance request dated December 19, 2013 requesting a right side yard variance of 4ft. and a front yard variance of 21 ft. for the property they own next to Cobble.

IV. That variance request was denied by the Board of Zoning Appeals.

V. Moore filed a second variance request that was different from the first variance request. The second variance request filed on February 28, 2014, requested the same right sideyard variance but requested a front setback variance of 28' feet rather than 21 feet. The practical effect of reducing the size of the variance for the front set back by seven feet would be that the proposed carport that the Moore's sought to install would not then be on the

County Right-of-Way and further, that the proposed variance if granted would cause the placement of the carport to be actually behind the fence that separated the respective properties of the Cobbles and the Moore's. The Court noted that that property line between Cobble and Moore had a solid wood fence approximately 6-8 feet in height. The Moore's lot had 100 feet of road frontage and was a little over 1/3 acre in size.

VI. As per the findings of the staff reported to the BZA, the Moore property had a significant slope on the left side and borders an undeveloped street; further that the property is challenged with exceptional topographical conditions; that the combination of sloped topography and increased left side-yard setback due to the subject property being a corner lot would make it difficult to locate the carport in that area.

VII. Moore would face an exceptional practical difficulty in locating the carport on the right front area of the property while meeting the minimum front and right-side yard setback required of the zoning district.

VIII. The BZA found that allowing the placement of the carport is characteristic with other lot of record properties in the area.

IX. That the staff made the recommendation to the BZA that the relief could be granted to Moore without substantial determent to the public good and without substantial impairment to the intent and purpose of the zoning ordinance.

X. The Court finds that the staff working for the Planning Office recommended approval of the variance request based on the above findings and further based on the fact that the requested variance met the provisions of Article 10 Section 1004.3 of the Zoning Ordinance.

XI. The Court finds from the record, that the public in general and that Cobble in particular as well as the other adjoining property owners had actual written notice of the Moore's request for a variance. The Court finds that Moore's property was posted, with a notice of the requested variance, that notification to the general public was accomplished by publication in the Greeneville Sun. The Court finds that adjoining property owners were provided specific written notice of a variance request.

XII. That the adjoining property owners including the Cobbles and the general public were given an opportunity to speak, testify, and argue for or against the granting of the variance before the Board of Zoning Appeals.

After considering the foregoing findings of fact the Court rendered the following conclusions of law.

1. That pursuant to T.C.A. § 13-7-207(3) The Greene County Board of Zoning Appeals has the authority to grant a variance from the strict application of the county's zoning ordinance under such circumstances as the board deems appropriate based on applicable law.

2. That the variance request by Moore dated December 19, 2013 was substantially different from the second variance request by Moore of February 28, 2014.

3. That res judicata is not applicable as it relates to Moore's second requested variance as that request is different from the Moore's first request for a variance. Moore's first request for a variance was for approval to construct the proposed use 21 feet from the front-yard setback, resulting in a variance of 34 feet. Moore's second request for a variance was for approval to construct the proposed use 28 feet from the front-yard setback, resulting in a variance of 27 feet which in effect would cause the Moore's proposed carport to be located off the county right-of-way and behind the privacy fence between the properties of Moore and Cobble.

4. The planning office had provided the required statutory notice to the general public by causing Moore's request for a variance to be publicized in the Greeneville Sun, a newspaper of general circulation in Greene County as well as providing specific written notice to the adjoining property owners. Furthermore, Moore's property was posted with signage stating that Moore was requesting a variance on their property.

5. The Petitioners had an ample opportunity to and actually did vehemently contest and object to the granting of the variance at the hearing before the BZA.

6. That the Board of Zoning Appeals acted entirely within its statutory authority by independently determining that the variance request should be granted based upon the significant slope on the left side of Moore property,

-7-

the fact that the Moore property bordered an undeveloped street and that the Moore property was challenged with exceptional topographical conditions.

7. That the Board of Zoning Appeals properly considered and weighed any possible substantial determent to the public and to the adjoining property owners in light of the zoning ordinance in granting the variance.

8. That the Board of Zoning Appeals imposed certain restrictions upon the granting of the Moore variance to limit the impact of the granting of the variance on the adjoining property owners and on the subdivision as a whole. Those restrictions included that the carport could not be permanently attached to the ground and that the carport could not have sides or doors. Based on those restrictions, the proposed carport would for all practical purposed be concealed except for its top from the view and sight of the adjoining property owners, the Cobbles.

9. This Court in exercising judicial review does not substitute its judgment for the judgment of the Board of Zoning Appeals; rather this Court determines whether the Board of Zoning Appeals exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently in granting the variance.

10. That the Greene County Board of Zoning Appeals based its grant of a variance to Moore on substantial and material evidence presented to the BZA by the staff, by Cobble, by Moores and other pertinent information and did not act in an arbitrary, capricious, or fraudulent manner.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the decision of the Greene County Board of Zoning Appeals in this matter is affirmed, that the Petitioners' Petition for Writ of Certiorari is dismissed with the Costs taxed to the Petitioners.

The Cobbles timely appealed to this Court.

### Discussion

We consolidate the issues the Cobbles raise on appeal as follows: 1) whether res judicata bars the Moores' second application for a variance; and, 2) whether the BZA's decision was supported by material evidence.

We first address whether res judicata bars the Moores' second application for a variance. Regarding the doctrine of res judicata as it relates to administrative agency decisions, this Court has stated:

> The doctrine of res judicata applies to the determinations of administrative agencies "acting in a quasi-judicial capacity" when the following conditions are met:
>
> > (1) the issues decided in adjudicative proceedings are identical; (2) the prior adjudication resulted in a judgment on the merits; (3) the proceedings involve the same parties; and (4) the parties had a full and fair opportunity to litigate the issue in the prior proceeding.
>
> *Wayman v. Transp. Licensing Comm'n of Metro. Gov't of Nashville & Davidson Cnty.*, No. M2009-01360-COA-R3-CV, 2010 WL 1293796, at *3 (Tenn. Ct. App. Apr. 5, 2010) (citing *Mangrum v. Wal-Mart Stores, Inc.*, 950 S.W.2d 33, 36 (Tenn. Ct. App. 1997)). The general rule concerning the application of the doctrine of res judicata to decisions by administrative boards has been summarized as follows:
>
> > Like a judgment of a court, an administrative adjudication is res judicata or conclusive between the same parties on the same cause of action not only as to all matters litigated, but as to all matters which could have been litigated in the proceeding with respect to such cause. An administrative decision denying or dismissing a party's claim on the merits precludes such party from obtaining, in a judicial proceeding not designated for review of the administrative decision, the relief denied by the administrative agency, whether upon the same ground as urged in the administrative proceeding, or upon another ground. An administrative decision granting a party the relief asked for prevents such a party from obtaining additional relief in a judicial proceeding upon the same ground.
>
> *Purcell Enters., Inc. v. State*, 631 S.W.2d 401, 407 (Tenn. Ct. App. 1981) (quoting 2 AM. JUR. 2d *Administrative Law* § 502 (1962)).

*Finley v. Marshall County*, No. M2015-00313-COA-R3-CV, 2016 WL 3637879, at *4 (Tenn. Ct. App. Jan. 20, 2016), *no appl. perm. appeal filed*.

The Cobbles argue that the Moores should have filed a petition for writ of certiorari to challenge the denial of their first application stemming from the January 22, 2014 hearing. Instead, the Moores elected to file a second application. According to the Cobbles, the Moores should not be allowed to seek essentially the same relief over and over again, causing additional cost and loss of time to all concerned.

If the Moores had, for instance, kept coming back seeking one foot less of a setback each time, we would agree. However, that is not what happened here. The Moores' second request was materially different from their first in that the seven foot reduction requested meant the difference between protruding onto public property or not. In our judgment, this is a substantial enough difference in the two applications to preclude application of the doctrine of res judicata.

The Cobbles argue further that, under principles of res judicata, the Moores should be barred from seeking even a different version of the same relief requested, because that too could have been addressed in the first hearing. We disagree. We think it unreasonable to expect, in the context of a board of zoning appeals hearing on an application for a variance, that the applicant somehow must exhaust the whole universe of possible permutations to his or her request lest he or she be bound permanently with the result. We hold that the Moores' second application for a variance, with its reduction in size of the proposed setback, was sufficiently different so as to preclude res judicata from barring their effort.

The next and final issue we address is whether the BZA's decision was supported by material evidence. The proper method for obtaining judicial review of a decision by a local board of zoning appeals is by filing a petition for a common law writ of certiorari. *Harding Academy v. Metro. Gov't of Nashville & Davidson County*, 222 S.W.3d 359, 362 (Tenn. 2007). The scope of review afforded to courts by a writ is extremely limited. *Id.* (citing *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)). Thus, the Trial Court, as are we, was restricted to determining whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *Lewis v. Bedford County Bd. of Zoning Appeals*, 174 S.W.3d 241, 245-46 (Tenn. Ct. App. 2004). In *Leonard Plating Company v. Metropolitan Government of Nashville and Davidson County*, we provided additional guidance regarding this standard of review:

> Review under a common-law writ of certiorari does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed. The courts may not (1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency. However, they may review the

-10-

record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one.

Ascertaining whether the record contains material evidence to support the board's or agency's decision is a question of law. For the purpose of this inquiry, "material evidence" is relevant evidence that a reasonable person would accept as adequate to support a rational conclusion. The amount of material evidence required to support a board's or agency's decision must exceed a scintilla of evidence but may be less than a preponderance of the evidence.

*Leonard Plating Co. v. Metropolitan Gov't of Nashville and Davidson County*, 213 S.W.3d 898, 903-04 (Tenn. Ct. App. 2006) (internal citations and footnotes omitted).

The issue of whether there is sufficient evidence to support a zoning decision is a question of law. *Wilson County Youth Emergency Shelter, Inc. v. Wilson County*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999) (citing *MC Properties, Inc. v. City of Chattanooga*, 994 S.W.2d 132, 134 (Tenn. Ct. App. 1999). Therefore, we review the record *de novo* without a presumption of correctness while applying the limited standard of review applicable here. *Id*.

In *McRae v. Knox County*, this Court discussed when it is proper to grant a variance as follows:

In *McClurkan v. Bd. of Zoning Appeals for the Metro. Gov't of Nashville and Davidson County*, 565 S.W.2d 495, 497 (Tenn. Ct. App. 1977), the zoning ordinance at issue "contemplate[d] that it is the peculiar circumstances of the land that must be the primary consideration, rather than any hardship personal to or created by an owner of it." We held that the board of zoning appeals is not "authorized to grant a variance when the only hardship to the owner in complying with the zoning regulations is the result of a condition existing not in the land itself but in a structure which was created or altered by an owner of the property in violation of the zoning ordinance." We noted that "the case for a variance here is made even weaker by a *lack of any evidence of hardship other than pecuniary loss, which has been held insufficient by itself to justify a variance*." *Id*. (Citing *Houston v. Memphis & Shelby County Bd. of Adjustment*, 488 S.W.2d 387 (Tenn. Ct. App. 1972). Ultimately, the court held that "unique features of the land itself are entirely lacking, and any hardship concerned only the condition of the house, which was brought about by the owner of

-11-

the property in violation of the zoning ordinance so that the Board exceeded its authority in granting the variance ...” In the case at Bar, Knox County Ordinance Section 6.60.04(A0(3) provides that “[m]ere loss in value shall not justify a variance; there must be a deprivation of beneficial use of land.”

*McRae v. Knox County*, No. E2003-01990-COA-R3-CV, 2004 WL 1056669, at *6 (Tenn. Ct. App. May 7, 2004), *Rule 11 perm. app. denied Nov. 15, 2004*.

As shown by the precedent cited above, our standard of review on this issue is extremely narrow. The bar is quite low as to what relevant evidence would be sufficient to support the BZA’s decision. We are not to substitute our judgment for that of the BZA, or reverse simply because we would have reached a different conclusion.

The Cobbles argue that, despite the exceedingly narrow and deferential standard of review, the BZA’s decision must be reversed because the record of the proceedings below reflects no exceptional or unique hardship arising from the Moore property. The BZA contends that the hardship comes from the topographical conditions in this neighborhood that make construction of a carport unfeasible without the variance. However, this begs the question. A desire to build a carport does not in itself generate grounds for a variance. The Moores own six vehicles. It is not at all clear how the Moores’ beneficial use of their property is impaired by any unique hardship from the terrain. On the contrary, it appears that any hardship incurred by the Moores is self-imposed. At the hearing before the BZA, Mr. Moore stated that it is his business how many vehicles he owns. He is correct, but it is another matter then to suggest he is entitled to a variance because of a self-created situation.

With respect to the uniqueness or exceptionalness of the subject property, we find no evidence in the record on appeal, material or otherwise, supporting a conclusion that the Moores’ property stands out in any meaningful way. Indeed, the staff report contained in the record states: “The rear of the property is challenged with exceptional topographical conditions. There are other similar lots of record within the subdivision that are also challenged by similar sloped and topographical conditions.” This is contradictory. Are all these “other similar lots … challenged by similar sloped and topographical conditions” exceptional as well? If every lot is exceptional, no lot is exceptional. The Trial Court found further that “the combination of sloped topography and increased left side-yard setback due to the subject property being a corner lot would make it difficult to locate the carport in that area.” However, a map of Mountain View Terrace contained in the record reveals that there are a number of properties abutting more than one street in the subdivision. Once again, the subject property simply is not distinctive. If Greene County considers the current zoning requirements unduly harsh or oppressive, then they may revisit them legislatively. However, adopting the position of

the BZA in the present appeal would mean the exceptions collapse the rule in this subdivision.

Having reviewed the record thoroughly, we find no material evidence to support the BZA's decision to grant the Moores' application for a variance. We, therefore, reverse the Trial Court as to its affirming the BZA's grant of the variance.

### Conclusion

The judgment of the Trial Court is affirmed, in part, and reversed, in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellees, the Greene County Board of Zoning Appeals; Greene County, Tennessee; Earl Scott Moore; and Joetta Moore.

_____
D. MICHAEL SWINEY, CHIEF JUDGE