IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 25, 2012 Session

## TOMMY WRIGHT, ET AL. v. THE CITY OF SHELBYVILLE BOARD OF ZONING APPEALS, ET AL.

Appeal from the Chancery Court for Bedford County
No. 28387      Larry B. Stanley, Jr., Judge

No. M2011-01446-COA-R3-CV - Filed October 31, 2012

This case involves a prolonged dispute over a proposed stone quarry that the plaintiff landowners, the Wrights, wished to establish on their property. While their application was pending, the city changed the zoning ordinance to rezone the Wrights' property so that a quarry was no longer permitted as a conditional use. The Wrights filed suit, and on appeal this court held that the notice of the zoning amendment had been defective and that the zoning change was therefore void. The Wrights subsequently asked the Board of Zoning Appeals to consider their application under the property's original zoning, but the BZA refused to put the application on its meeting agenda. The Wrights filed a petition for writ of certiorari. The trial court found that the BZA's action was arbitrary and illegal, but ruled that the Wrights were nonetheless precluded from obtaining any relief because of the operation of *res judicata*. We reverse the trial court's dismissal of the petition on the basis of res judicata, because we find that doctrine inapplicable. We agree with the trial court that the BZA's actions were arbitrary and capricious.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ. joined.

Josh A. McCreary, Murfreesboro, Tennessee, for the appellants, Tommy Wright, Norma Wright, Wright Paving Company, Inc., and Custom Stone, LLC.

Ginger Bobo Shofner, Shelbyville, Tennessee; Robert M. Burns, Nashville, Tennessee, for the appellees, The City of Shelbyville Board of Zoning Appeals, The City of Shelbyville, Tennessee, and Ed Dodson, Director of the Shelbyville Planning and Codes Department.

# OPINION

## I. FIRST APPLICATION FOR A CONDITIONAL USE PERMIT

This is the second time the parties have appeared before this court regarding a proposed quarry. The ruling generated from the first case can be read at *Wright v. City of Shelbyville,* M2009-00321-COA-R3-CV, 2009 WL 3631019 (Tenn. Ct. App. Nov. 3, 2009) (Rule 11 perm. app. denied April 14, 2010). A detailed account of the facts behind the parties' dispute is set out in that opinion. A brief factual summary is stated here.

On February 12, 2004, Tommy Wright and Norma Wright, and their businesses Wright Paving Company, Inc. and Custom Stone, LLC ("the Wrights"), sent a letter to the Shelbyville Board of Zoning Appeals ("the BZA") requesting approval of a conditional use permit to open a rock quarry on a 92 acre property that they owned within the Shelbyville city limits. Their property was zoned I-2, for industrial use, when they filed their permit application. The Shelbyville Zoning Ordinance included mining and quarrying as permitted uses in an I-2 zone, subject to approval as a conditional use.[1]

A hearing was scheduled, but before it was conducted, the Wrights requested by letter that the application be removed from the agenda of the February meeting so that additional engineering studies could be performed. In a subsequent letter from their engineers, the Wrights stated their intention that their application remain "pending." The letter also stated that the engineer could not find in the zoning regulations a time limit specified for keeping an application for special condition pending and concluded with "please notify me if, at any time, the application will need to be resubmitted to be considered, and we will initiate the appropriate actions."

The Wrights were never notified of a time limit for hearing of their application, but the Shelbyville City Council subsequently amended the city's zoning ordinance by passage of Ordinance 742 on July 8, 2004. Ordinance 742 removed mining and quarrying as a conditional use in an I-2 district and created a new industrial zoning district designated as I-3, which included mining and quarrying as a conditional use. The new district did not apply to any designated areas, but was characterized as a "floating" district that could be placed on property anywhere in the city.

The Wrights asked the Shelbyville Planning Commission to consider their earlier-filed

---

[1]The permit sought is variously referred to in the documents before us as one for a conditional use, a special exception or for special conditions. For the sake of simplicity, we will simply refer to it as a conditional use permit. *See also footnote 6.*

application for a conditional use permit at its November 18, 2004, meeting. The Planning Commission advised them that it would not consider the plan unless it was submitted under the new I-3 zoning provisions. Plaintiffs filed an application to have their property rezoned to I-3, and the Commission denied the application.

Plaintiffs then sued the City claiming that there were numerous irregularities in the manner in which Ordinance 742 was adopted. The trial court granted partial summary judgment to Shelbyville, holding that Ordinance 742 was validly enacted and that Plaintiffs did not have a vested right to have their application considered under the zoning in effect prior to the enactment of that ordinance. On appeal, this court held that the challenged notice did not meet the standard of fair notice that can only be met if the content of the notice "gives the average reader reasonable warning that land in which he has an interest may be affected by the legislation proposed." *Wright v. City of Shelbyville,* 2009 WL 3631019, at *4. Accordingly, we held that Ordinance 742 was invalid. *Id.* The City of Shelbyville filed a Rule 11 Tenn. R. App. P. application for permission to appeal our decision to the Tennessee Supreme Court, which was denied on April 14, 2010.

## II. SUBSEQUENT PROCEEDINGS

Shortly after this court filed its opinion in the first case on November 3, 2009, the Wrights wrote the Codes Director to inform him that it was their intention to "have the application that has been pending for a Special Condition in the I-2 District heard at this time." The letter recounted the history of the application and stated that "in view of the recent Court of Appeals decision, the I-3 Zone no longer exists."

After the Tennessee Supreme Court denied the City permission to appeal our decision, on May 4, 2010, the Wrights' attorney wrote to City Codes Director, Ed Dodson, asking that their long-pending 2004 application for a conditional use in an I-2 zone be placed on the agenda for the next meeting of the Board of Zoning Appeals, since the decision of this court had rendered the I-3 zone invalid. They also announced that their engineering firm would be submitting an updated application. Shortly thereafter, the Wrights did file an updated application.

The city's response came in the form of a letter signed by Mr. Dodson and the City Attorney. It stated that the Wrights' 2004 application would not be placed on the agenda and set out two reasons for the decision. The City asserted that the Wrights had withdrawn that 2004 application and that a valid I-3 zoning district had since been added to the zoning

-3-

ordinance, thereby precluding any consideration of the proposed quarry in an I-2 zone.[2] It also stated that because the new application included nine acres that were not part of the original plan, it was not identical to the 2004 application, and thus "has no claim to any benefit of previous law."

The Wrights appealed the City's administrative decision to the BZA, in accordance with that body's authority under Tenn. Code Ann. § 13-7-207(1). The BZA conducted a hearing on June 24, 2010. The members of the Board voted, without discussion, to uphold the decision of the planning director.

The Wrights filed a Petition for Writ of Certiorari in the Bedford County Chancery Court on July 23, 2010. Judge Russell, who had rendered the decision in the first case, recused himself, and Judge Stanley was appointed to sit by interchange. The court granted the writ and ordered the record to be sent up for review.

The court conducted a hearing on the merits of the Plaintiffs' petition for certiorari on May 2, 2011. The City Attorney argued that the petition was barred by the doctrine of *res judicata* and entered this court's 2009 opinion in *Wright v. City of Shelbyville* into the record. The trial court announced its decision in an order entered on May 13, 2011. The court dismissed the petition, agreeing with the city that it was barred by the doctrine of *res judicata*. However, the court also held that if it were not for the operation of *res judicata*, the actions of the BZA would be considered arbitrary and capricious and would have merited reversal under the standards for writ of certiorari. This appeal followed.

## III. RES JUDICATA

The trial court ruled that the Wrights were not entitled to relief because of the operation of *res judicata*. A trial court's decision that a subsequent lawsuit is barred by principles of *res judicata* presents a question of law which this court reviews *de novo*. *In re Estate of Boote*, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005).

The doctrine of *res judicata* bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. *Creech v. Addington,* 281 S.W.3d 363, 376 (Tenn. 2009); *Richardson v. Board of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995). The doctrine is based on the public policy favoring finality in litigation. It does not depend on the correctness or

---

[2]The second rezoning was apparently accomplished after this court filed its opinion in the first case, but before the Supreme Court declined to review that opinion. The validity of the second rezoning is not at issue in this case, but only its applicability to Plaintiffs' property.

fairness of the first judgment, so long as that judgment was a valid one. *Lee v. Hall,* 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990).

The BZA's arguments in the trial court and on appeal, as well as the trial court's order, clearly identify the holding that is at issue. The trial court explained the background and basis of the *res judicata* argument:

> On the 18th day of December 2008, Judge Lee Russell signed an order which stated that the City acted properly in giving notice to the public regarding the rezoning ordinance. Further, he stated that "the Plaintiffs failed to offer evidence of substantial construction and/or significant liabilities so as to entitle the Plaintiffs to a vested right to have their request for a zoning change considered under the 1-2 zoning classification of the zoning ordinance which was in effect prior to the July 2004 ordinance amendment. The City's refusal to permit the Plaintiff's request for a zoning amendment to be considered pursuant to the former 1-2 zoning ordinance was therefore, proper as a matter of law, and the City is entitled to a summary judgment in its favor on that issue."

> The ruling was appealed and the only issue raised on appeal was the notice of the proposed zoning change. The Court of Appeals reversed the Chancery Court's ruling and stated that notice was improper. Therefore, **an I-3 zone did not exist at the time that ruling was published** on November 3, 2009.
>
> . . .
>
> This Court must now decide if the prior order from 2008 precludes consideration of the *Writ of Certiorari* before it. The Complaint alleged that the Planning Commission failed to grant a hearing on whether the Plaintiffs would be granted a special exception under its I-2 zone and be allowed to run a quarry. Evidently, the Chancery Court heard proof, not only on whether the denial of a hearing was proper, but also if a hearing was granted, whether the Plaintiffs would qualify for a special exemption. The Court at that time placed the burden on the Plaintiffs to prove "substantial construction and/or significant liabilities so as to entitle the Plaintiffs to a vested right to have their request for a zoning change considered by the Commission." This Court has no idea whether proper procedure was followed by the Chancery Court of Shelbyville, nor whether it made a correct statement of law and finding of fact. However, an appeal was taken and the Plaintiffs failed to challenge the findings and procedure followed. It is this Court's opinion that failure to raise that issue on appeal bars them from seeking this Writ. (emphasis added).

Obviously, the trial court based its *res judicata* ruling on the holding in the first case regarding the Wrights' failure to establish that they had a vested right to have their 2004 application considered under the **prior zoning ordinance** *i.e.*, before the rezoning accomplished by Ordinance 742 in 2004.

The City describes the trial court's decision herein as a finding that the Wrights' argument that they had "a right for their application to be considered under the **prior zoning law** in existence in February 2004, had been litigated previously with a ruling that no such right existed, thus the [Wrights] were barred by the doctrine of *res judicata* from attempting to reargue that they were entitled to be heard under prior law."

The principle of vested rights has no relevance to this appeal because of this court's decision that Ordinance 742 was invalid. In other words, the Wrights are not seeking approval under a prior zoning ordinance before it was amended because, in effect, the rezoning attempted through Ordinance 742 was not accomplished.

Within the context of zoning law, "vested rights" usually involves the question of whether a party has taken action in good-faith reliance on a permit that the zoning body attempts to revoke on the basis of a defect in the permit or some subsequent change in the controlling law. *Capps v. Metro. Gov't of Nashville & Davidson County*, M2007-01013-COA-R3-CV, 2008 WL 5427972 (Tenn. Ct. App. Dec. 31, 2008) (no Tenn. R. App. P. 11 application filed); *Chickering Ventures, Inc. v. Metro. Gov't of Nashville & Davidson County,* No. 88-184-II, 1988 WL 133527, at *3 (Tenn. Ct. App. Dec. 16, 1988) (citing *Moore v. Memphis Stone & Gravel Co.*, 339 S.W.2d 29 (Tenn. Ct. App. 1959)).

"The concept of a vested right in a zoning, which has long been recognized in Tennessee, allows property owners, who have acquired the requisite 'vested' interest under an existing zone, to use and develop the property pursuant to said zone even if a subsequent zoning ordinance is enacted." *Westchester Co., LLC v. Metro. Gov't of Nashville and Davidson County*, 2005 WL 3487804, at *3 (Tenn. Ct. App. December 20, 2005). Rights under an existing ordinance do not vest until substantial construction or substantial liabilities are incurred relating directly to construction. *State of Tennessee, ex rel. SCA Chemical Waste Services v. Konigsberg*, 636 S.W.2d 430, 437 (Tenn. 1982). In summary, a landowner who asserts a vested right to develop under a prior zoning ordinance must demonstrate good faith reliance on final prior government approval coupled with substantial expenditures or liabilities incurred that relate directly to construction.

That is simply not the factual situation here. In our earlier opinion, we held that

because of defective notice, Ordinance 742 was invalid.[3] *Wright v. City of Shelbyville,* 2009 WL 3631019 at *4. Because it was invalid, it never took effect. Under the *void ab initio* doctrine, "an invalid statute or ordinance is treated as though it never existed." *See Edwards v. Allen,* 216 S.W.3d 278, 289 (Tenn. 2007). Consequently, the zoning ordinance in effect prior to the adoption of Ordinance 742 was once again the law as if Ordinance 742 had never been adopted.

The Wrights were entitled to have their application considered under the only zoning in place at the time of their application. There was no "prior" zoning, no subsequent (2004) amendment, and no need for the Wrights to assert the vested rights theory. The Wrights' property remained zoned I-2, a category that allowed quarries as a conditional use.

We therefore reverse the trial court's holding that the Wrights' petition is barred by *res judicata*. The Wrights' ability to have their application considered under the zoning law that existed when they applied does not rest upon the vested rights theory. Therefore, any holding in the earlier case on that theory is not relevant herein.

## IV. THE MERITS OF THE PETITION

The Wrights' petition challenged the decision of the BZA, made June 24, 2010, approving the Codes Director's refusal to send the Wrights' application for approval of a conditional use to operate a rock quarry and crusher to the BZA for consideration.

The trial court stated that, if its *res judicata* holding did not preclude examination of the merits of the Wrights' petition, *i.e.*, if that holding were reversed on appeal, it would hold that the BZA's action was arbitrary and capricious because the decision to deny a hearing was based either on incorrect assumptions regarding zoning laws or the facts relating to the application and if it was valid at that time.

### A. Standard of Review

---

[3]Although we did not specifically say so in our earlier opinion, it is clear that Ordinance 742 was not merely voidable, but void *ab initio*. We acknowledge that an exception to the void *ab initio* doctrine exists within the context of zoning where a zoning ordinance has remained unchallenged over a significant period of time. As this court has stated, "[a]fter long public acquiescence in the substance of an ordinance, public policy does not permit such an attack on the validity of the ordinance because of procedural irregularities." *Hutcherson v. Criner*, 11 S.W.3d 126, 134 (Tenn. Ct. App. 1999). *See, also*, *Metropolitan Gov't of Nashville v. Hudson,* 148 S.W.3d 907 ((Tenn. Ct. App. 2003). In this case, there is no suggestion of long public acquiescence to Ordinance 742 or of property owners taking action in reliance on that ordinance. To the contrary, the Wrights promptly challenged its validity and obtained a ruling striking it down.

Judicial review of a decision by a local board of zoning appeals is obtained by filing a petition for common law writ of certiorari. *Harding Academy v. Metro Gov't of Nashville and Davidson County*, 222 S.W.3d 359, 363 (Tenn. 2007); *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990); *Moore & Associates, Inc. v. West*, 246 S.W.3d 569, 576 (Tenn. Ct. App. 2005). If the writ is issued, the board is ordered to send its record up for review so that the court can determine whether the petitioner is entitled to relief. *Lewis v. Bedford County Bd. of Zoning Appeals*, 174 S.W.3d 241, 245 (Tenn. Ct. App. 2004); *Clark v. Metropolitan Gov't of Nashville and Davidson County*, 827 S.W.2d 312, 316 (Tenn. Ct. App. 1991).

The scope of review under the writ is very narrow. It is limited to an inquiry into whether the BZA exceeded its jurisdiction, followed unlawful procedure, acted illegally, fraudulently, or arbitrarily, or acted without material evidence to support its decision. *BMC Enterprises, Inc. v. City of Mt. Juliet*, 273 S.W.3d 619, 624 (Tenn. Ct. App. 2008); *Lewis v. Bedford County Board of Zoning Appeals*, 174 S.W.3d at 245; *Lafferty v. City of Winchester,* 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000).

Our Supreme Court has stated that "illegal, arbitrary or fraudulent actions include: (1) the failure to follow the minimum standards of due process; (2) the misrepresentation or misapplication of legal standards; (3) basing a decision on ulterior motives; and (4) violating applicable constitutional standards." *Harding Academy v. Metro Gov't of Nashville and Davidson County*, 222 S.W.3d at 363 (citing *Hoover, Inc. v. Metro Board of Zoning Appeals*, 924 S.W.2d 900, 905 (Tenn. Ct. App. 1996)).

## B. The BZA Decision

The BZA decision at issue resulted from its review of the Codes Director's determination that the Wrights' application for conditional use in an I-2 zoning district could not be considered by the BZA. *See* Tenn. Code Ann. § 13-7-207(1). A brief recitation of events leading up to the BZA hearing is in order.

Shortly after this court filed its opinion in the first case on November 3, 2009, the Wrights wrote the Codes Director to inform him that it was their intention to "have the application that has been pending for a Special Condition in the I-2 District heard at this time." The letter recounted the history of the application and stated that in view of the recent Court of Appeals decision, "the I-3 Zone no longer exists." The application was not put before the BZA as a result of this letter, and the record does not reflect any other response to the letter.

Meanwhile, the City proceeded with a proposed zoning amendment that would

essentially re-adopt Ordinance 742, and that amendment was passed in January of 2010. On May 4, 2010, after the Tennessee Supreme Court denied the City permission to appeal this court's decision, the Wrights' attorney wrote to the Codes Director and requested that their long-pending 2004 application for a conditional use in an I-2 zone be placed on the agenda for the next meeting of the Board of Zoning Appeals. The letter stated that in 2004 the Wrights submitted an application to allow a rock quarry on their property as permitted by special exception within an I-2 zone. The letter further stated, "As you are probably aware, that particular application was never formally acted on," and recounted the history of the attempt to get the application heard, including the litigation history and this court's holding. The letter continued:

> I understand the City of Shelbyville has since attempted to enact an I-3 zone. Nonetheless, my client has had a pending application for a special exception in an I-2 zone since 2004. Now that the litigation has been resolved, I would kindly ask that you place my client's application on the Board of Zoning Appeals' agenda for its May meeting.

The letter also stated that the Wrights' engineering firm would be submitting an updated application. Shortly thereafter, an updated application was provided.

The city's response came in the form of a letter signed by the Codes Director and the City Attorney. It stated that the Wrights' 2004 application would not be placed on the agenda "as it is the City's position that the request is subject to current zoning law, which requires rock quarries to be in an I-3 zoning." The letter set out two reasons for that position: (1) the Wrights' 2004 application was not still pending, and (2) the current application was not identical to the 2004 application. The Wrights appealed the decision by the administrator, and that appeal was brought before the BZA at its meeting.

At the meeting, the Codes Director explained his decision not to place the application on the BZA's agenda, including his reliance on the city's attorney's advice that the issue of whether the Wrights could proceed under the prior zoning law had been decided by the trial court earlier and that ruling was still in effect.[4] Since the property was not zoned for a quarry, it was not eligible for BZA consideration for conditional use approval. He presented the letter explaining the denial to the Wrights. Counsel for the Wrights presented a written statement of their position and also responded to the reasons given by the City. The BZA voted to affirm the Codes Director's denial of consideration.

The BZA's position is not that the Wrights' 2004 application must be considered

---

[4]This is the same position as the City's *res judicata* argument discussed earlier.

under the zoning change adopted in January of 2010. Instead, it is the position of the BZA that the 2004 application was no longer pending and/or was replaced by a new application in 2010 that differed in a significant way from the 2004 application.

The BZA's decision not to argue that the 2004 application, if still pending and effective, must be considered under zoning effected by a 2010 amendment is consistent with established legal principles. It is the general rule in Tennessee that a properly filed application must be considered under the zoning ordinance in effect at the time an application is filed, and it is not subject to later amendments to that ordinance.[5] *See, Harding Academy v. Metro Gov't of Nashville and Davidson County*, 222 S.W.3d 359, 363 (Tenn 2007).

As the Wrights point out, courts in several other jurisdictions faced with similar questions have likewise concluded that retroactive application of a zoning ordinance is improper and unfair to applicants. The Idaho Supreme Court explained that "to permit retroactive application of an ordinance would allow a zoning authority to change or enact a zoning law merely to defeat an application, which would result in giving immediate effect to a future or proposed zoning ordinance before that ordinance was properly enacted." *Payette River Property Owners Association v. Board of Commissioners*, 976 P.2d 477, 48–82 (Idaho 1999). *See, also, Gipson v. City of Oberlin,* 167 N.E. 651, 654 (Ohio 1960); *Colonial Park for Mobile Homes, Inc., New Borough Zoning Hearing Board*, 290 A.2d 719, 723 (Pa. 1972).

## C. The 2004 Application

The BZA contends that the Wrights withdrew their 2004 application for a conditional permit and, thus, that they are not entitled to the benefit of having the updated application that they submitted in 2010 considered under the I-2 zoning in place at the time of the submission of their original application. The proof shows, however, that in 2004 the Plaintiffs simply asked that their 2004 application be removed from the agenda of a specific meeting and requested that the application remain pending. The trial court specifically found that the application was never withdrawn.

---

[5]Tennessee recognizes an exception to the general rule in the "pending ordinance doctrine," which provides that "a building permit need not be issued if pending at the time of application is an amendment to a zoning ordinance that would prohibit the use of land for which the permit is sought." *Harding Academy*, 222 S.W.3d at 364 (citing 101A C.J.S. *Zoning & Land Planning* § 262 (2005)); *State ex rel. SCA Chemical Waste Services, Inc. v. Konigsberg*, 636 S.W.2d at 437. But the City offered no proof that an amendment to the zoning ordinance was even being considered when Plaintiffs filed their initial application. It was only **after** Plaintiffs submitted their application that the City took the first steps towards the enactment of Ordinance 742.

The BZA also argues that there is no legal basis for allowing an applicant for a conditional use permit to indefinitely postpone action on an application. It complains that too many years had passed since Plaintiffs' 2004 application for that application to remain viable. The BZA does not, however, cite any provision in its Zoning Ordinance that places a time limit on applications. It never notified the Wrights of any time limit for action on the application. Further, the delay in this case was not caused by dilatory tactics on the part of Plaintiffs, but rather by a course of judicial proceedings that resulted in the striking of the attempted amendment change.

The Wrights tried numerous times, unsuccessfully, to have their application for a conditional use permit considered on its merits. Despite several attempts over a period of eight years, all blocked by the City in one way or another, the Wrights have not had their application considered under the appropriate zoning. In effect, they have not yet had their bite of the apple. Under the circumstances of this case, the BZA cannot claim that the Wrights have taken too long to get their application considered.

Another argument presented by the BZA is that the updated application the Wrights submitted in 2010 somehow voided the original application. But, the Zoning Ordinance does not prohibit an applicant from updating an application. The Wrights assert that it is a matter of routine to modify an application on the basis of additional information gathered between the original filing date and the hearing date, so long as the basic character of the proposed use does not change.

The BZA points to the fact that nine acres that were added to the updated application and suggests that their inclusion totally changes the character of the original application. Plaintiffs assert, however that they acquired the new property after they submitted their original application, that the additional acreage carries the same zoning classification as the rest of the property, and that they did not propose using the additional acreage to expand the footprint of the quarrying operation, but only to provide road frontage for additional potential access to the site. We conclude that the addition of the property as described is an update to the pending application and does not somehow invalidate the 2004 application.

## V. THE PROPER REMEDY

The parties have urged different remedies on us in the event that we reverse the trial court. The Wrights would like us to simply order the Board of Zoning Appeals to issue the permit they requested. They note that the minutes of the 2004 Planning Commission meeting at which their application for a permit under I-3 zoning was rejected show that the City Engineer stated that they "met all the conditions which were required of them." They argue that if their application met all the I-3 conditions, then it surely met the less stringent I-2

-11-

conditions.

For its part, the BZA contends that the most appropriate remedy is to remand the Wrights' application to the Board of Zoning Appeals for further proceedings. It reasons that the determination of whether an application for a conditional use or special exception permit meets the relevant conditions is within the purview of the BZA, not the Planning Commission or the City Engineer. Further, this court has observed that,

> Because courts should avoid requiring local zoning authorities to take a particular action except in the most extraordinary circumstances, the most common judicial remedy in zoning cases is to remand the case to the zoning agency with instructions appropriate to the circumstances of the case . . . . Rather than shouldering the local agency's responsibilities, the courts should insist that the agency carry out its task in an appropriate manner . . . . The goal of a remand should be to place the parties and the agency in the position they would have been in had the agency not acted improperly.

*Hoover v. Metropolitan Board of Zoning*, 955 S.W.2d 52, 55 (Tenn. Ct. App. 1997) (internal citations omitted).

The Board of Zoning Appeals has not yet determined for itself whether the Wrights' original application or its updated application meet the requirements for a conditional use permit. We accordingly remand this case to the BZA for consideration of the Wrights' 2004 application, as updated, in light of this opinion and the nature for a request for conditional use or special exception.

A special exception,[6] unlike a variance, is not an exception to a zoning ordinance. Instead, it is a use that is expressly permitted.

> "Special exception" is clearly a misnomer. Since **the use is specifically provided for in the ordinance as one to be permitted** where the conditions legislatively prescribed are found, no exception to the ordinance is being made. The use permitted by approval of the board of adjustment, the legislative body, the planning board, or the "zoning administrator," as the case may be,

---

[6]"The term 'special exception' is a carryover from the early days of zoning; the term 'special permit' goes even farther back, being found in regulatory ordinances prior to zoning. Because the early zoning ordinances adopted these terms, the courts ruling upon such provisions necessarily used the language of the ordinances before them which perpetuated the use of these terms. 3 Rathkopf's THE LAW OF ZONING AND PLANNING § 61:9 (4th ed.).

**contingent on meeting the standards and conditions set forth in the ordinance**, is more correctly termed a "conditional use." This is, in fact, the term which is used in some statutes.

3 Rathkopf's THE LAW OF ZONING AND PLANNING § 61:9 (4th ed.) (emphasis added).

A conditional use or special exception allows a landowner to put his property to a use which the ordinance expressly permits. It requires only a finding that the conditions stated in the ordinance have been met. *Id*. at § 61:11. "The inclusion of the particular use in the ordinance as one that is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district. *Id*.

Where the legislative body has authorized a use by special exception or conditional use, courts will presume that such use serves the public interest when located in the district where it is authorized. 2 Am. Law, Zoning § 14.12 (5th ed.). Classification of a use as one that is permitted as a special exception constitutes a legislative finding that the use accords with the general zoning plan, is in harmony with, or will not adversely affect, the surrounding neighborhood, and meets a public need. *Robert Lee Realty Co. v. Village of Spring Valley*, 61 N.Y.2d 892, 474 N.Y.S.2d 475, 462 N.E.2d 1193 (1984); *Dan Gernatt Gravel Products, Inc. v. Town of Collins*, 105 A.D.2d 1057, 482 N.Y.S.2d 587 (4th Dep't 1984); *Kristensen v. City of Eugene Planning Commission*, 24 Or. App. 131, 544 P.2d 591 (1976); *Brentwood Borough v. Cooper*, 60 Pa. Commw. 462, 431 A.2d 1177 (1981).

Tennessee law follows these generally applicable principles. In fact, state statutes recognize the difference between a variance and a use permitted under certain conditions. Tennessee Code Annotated § 13-7-207 sets out the powers of boards of zoning appeals. Subsection (3) authorizes such boards to grant a variance from strict application of zoning regulations where exceptional difficulties to, or undue hardship upon, the property owner would otherwise result. On the other hand, subsection (2) authorizes a board of zoning appeals to "[h]ear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions." Tenn. Code Ann. § 13-7-207(2).

## VI. ATTORNEY FEES

The Wrights asked the trial court to award them their attorney fees under the "Equal Access to Justice Act" of Tenn. Code Ann. § 29-37-101 *et seq*. That statute allows courts to award actual attorney fees of up to $10,000 to a "small business" (as that term is defined in the Act), if it is the prevailing party in an action against a state agency or a local government and if the small business has demonstrated that the actions of the governmental

entity "were arbitrary or capricious or were brought in bad faith for the purpose of harassment." Tenn. Code Ann. § 29-37-104(b)(2). *See BMC Enterprises Inc. v. City of Mt. Juliet*, 273 S.W.3d at 628 (awarding such fees for the arbitrary and capricious actions of a municipal Board of Zoning Appeals).

The Wrights did not prevail at trial and the trial court did not award them the requested fees. But since we have reversed the trial court, and we have found that the action of the BZA was in fact arbitrary, as did the trial court, the Wrights may be eligible for attorney fees. We therefore remand this case to the trial court to determine whether the Wrights' enterprises are entitled to an award of fees under the statute.

## VII. Conclusion

The order of the trial court is reversed. We remand this case to the Chancery Court of Bedford County for further proceedings as to attorney fees, and we remand to the Shelbyville Board of Zoning Appeals for consideration of the Wrights' application at the earliest possible date. Tax the costs on appeal to the appellees.

_____
PATRICIA J. COTTRELL, JUDGE