IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2024 Session

## HUNTERS POINT QUARRY LLC v. METROPOLITAN GOVERNMENT OF HARTSVILLE AND TROUSDALE COUNTY, TENNESSEE ET AL.

**Appeal from the Chancery Court for Trousdale County**
**No. 2022-CV-7869  Charles K. Smith, Chancellor**

———————————————————

**No. M2023-00883-COA-R3-CV**

———————————————————

A county regional planning commission denied the petitioner's application to place a quarry in an agricultural zone.  The zoning laws included certain requirements for quarrying.  None of the zones, however, permitted quarrying, and all the zones prohibited any unpermitted uses.  The petitioner sought a writ of certiorari.  The trial court granted summary judgment to the county respondents, concluding that the planning commission did not act illegally, capriciously, fraudulently, or without material evidence.  Because the zoning laws for the agricultural zone did not permit quarrying and explicitly prohibited unpermitted uses, we affirm the grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

Joshua R. Denton and Tonya J. Austin, Brentwood, Tennessee, for the appellant, Hunters Point Quarry LLC.

Branden Bellar, Carthage, Tennessee, and Thomas B. Russell, Nashville, Tennessee, for the appellees, Metropolitan Government of Hartsville and Trousdale County, Tennessee, and Hartsville/Trousdale County Regional Planning Commission.

**OPINION**

I.

Hunters Point Quarry LLC (Hunters Point) sought to place a rock mine to extract

aggregate resources on a parcel of approximately 150 acres zoned A-1, or Agricultural-Forestry, in Trousdale County. The parties disagree over the interpretation of the Hartsville/Trousdale Zoning Resolution (Zoning Resolution) and whether it permits such usage in the A-1 zoned area. According to Hunters Point, quarrying is permitted under the Zoning Resolution in any zone, whether residential, commercial, agricultural, or industrial, so long as the proposed quarry meets certain development standards, including that the area be sparsely developed. According to the Metropolitan Government of Hartsville and Trousdale County, Tennessee, and the Hartsville/Trousdale County Regional Planning Commission (County Respondents), quarrying is prohibited in the A-1 district because the Zoning Resolution expressly lists the specific permitted uses in the A-1 district, quarrying is not listed as a permitted use in the A-1 district, and all non-permitted uses are explicitly prohibited in the A-1 district by the Zoning Resolution. We affirm the chancery court's determination that the County Respondents are entitled to summary judgment because Hunters Point cannot show that the County Respondents acted beyond their jurisdiction, illegally, arbitrarily, capriciously, fraudulently, or without material evidence.

Prior to 2003, the Zoning Resolution permitted mining and quarrying in general industrial areas zoned M-1. However, in 2003, the Zoning Resolution was rewritten to create categories M-1 and M-2, general industrial and intermediate-impact industrial districts. After this amendment, mining and quarrying were not specifically included in either industrial zone as permitted uses, or, indeed, anywhere in the jurisdiction under the Zoning Resolution. Under the Zoning Resolution, each district included a description of permitted uses and language to the effect that all uses not specifically permitted or permitted as special exceptions were strictly prohibited.

Section 4.120 of the Zoning Resolution, entitled "Development Standards For Mining Activities and Related Services," however, survived. That section required mining and related activities to meet the following conditions:

A. The location of such an activity shall be in an area sparsely developed during the length of time the mining and quarrying activity is anticipated.

B. The proposed site shall be subject to the following conditions:

1. Operations shall be conducted so as not to create a nuisance or cause undue noise, vibration, dust, odor, or candescence to adjacent properties. The premises shall be kept in a neat and clean condition at all times. No loose paper or debris shall be allowed on the site, except on areas where active filling operations are taking place.

2. No excavation or filling shall be made within one hundred (100)

feet of any boundary of the site.

3. Side slopes of excavation and fills in earth, sand or gravel shall not exceed one (1) foot vertical to three (3) feet horizontal and shall be blended into undisturbed existing surfaces.

4. Provisions shall be made for the disposal of surface water, falling on or crossing the site at all times, during and after completion of the operations. The operations shall not obstruct the normal flow of any public drain, or abrogate the riparian rights of any other party to a stream or drain.

This orphaned provision came to the attention of the Planning Commission on February 14, 2022. At a meeting of the Planning Commission, Sam Edwards from the county's Building and Zoning Department offered his opinion that mining under the current Zoning Resolution could be conducted in any zone so long as the area under consideration was sparsely populated, and he stated that it was advisable to amend the Zoning Resolution to set a specific zoning designation for mining instead. In March and April 2022, the Planning Commission again discussed recommending to the County Commission possible changes to the Zoning Resolution.

While the Planning Commission spent months drafting a recommended amendment to the Zoning Resolution,[1] Hunters Point moved to put together an application for a quarry. Taking a cue from the concern voiced by Mr. Edwards that a mine could go "anywhere" under the current Zoning Resolution, Hunters Point filed an application for the approval of a Site/Plot Plan on May 9, 2022, proposing a site that was zoned A-1, Agriculture-Forestry District.

The Zoning Resolution describes the Agriculture-Forestry District as follows:

This district is intended to preserve space for agricultural and forestry uses which together comprise an important segment of the economy of Trousdale County. The primary intent, of the A-1 District, is to minimize conflicts between agricultural and forestry activities and various nonfarm activities; to permit lands best suited for intense agricultural uses to be reserves for these suited purposes; and to prevent lands unsuitable for development of an urban or non rural nature, due to

---

[1] On June 27, 2022, the Hartsville Trousdale County Commission was presented with two competing resolutions to amend the ordinance regarding mining, one from the Planning Commission and one from the Codes & Zoning Commission. On July 25, 2022, an amendment allowing mining as a special exception in zone M-2, which already included stone manufacturing, was passed. *See* Ord. 243-2022-13, *see also* Trousdale County Zoning Resolution,

topographic problems, location, or the inability to provide necessary urban services, or being encroached upon by these incompatible land uses.  Areas assigned to the A-1 District are primarily areas where growth of an urban or nonrural nature is deemed undesirable for one or more of the reasons outlined above.  The following regulations shall apply in the A-1 Agriculture-Forestry District, as defined on the Zoning Map, of Trousdale County, Tennessee.

The Zoning Resolution curtails uses of the District: "in the A-1, Agriculture-Forestry District, the following uses and their accessory uses are permitted."  Permitted uses include, for example, crop processing, crop cultivation, horticultural services, soil preparation, riding stables, dairies, farms, raising of plants, animals and fish, forestry and plant nurseries, dwellings, fisheries, outdoor shooting ranges, and essential services such as electrical and gas substations.  "Accessory" uses are also listed and include private garages, barns, stables, sheds and farm buildings.  Certain special exception uses are also permitted: "In the A-1, Agriculture-Forestry Districts, the following uses and their accessory uses may be permitted as special exceptions after review and approval in accordance with" the Zoning Resolution.  These special exception uses include, for example, governmental offices, courts, fire departments, post offices, police departments, civic, social, fraternal, and philanthropic associations, clubs, lodges, meeting halls, and recreation centers, nursery and other schools, art galleries, libraries, museums, recreational centers, and other cultural services, cemeteries, bed and breakfast establishments, commercial docks and marinas, country clubs, water and sewage treatment plants, group care facilities such as nursing homes, or homes for physically or mentally handicapped persons, religious facilities, veterinary clinics, commercial convenience centers such as beauty shops, drug stores, groceries, laundry, and tobacco shops, and commercial stockyards or feed lots.

Having listed the permitted uses, accessory uses, and uses permitted by special exceptions, the Zoning Resolution bars any other use.  It provides as follows: "In the A-1, Agriculture-Forestry District, all uses except those uses or their accessory uses specifically permitted or permitted upon approval as a special exception by the Board are strictly prohibited."

Hunters Point's application for approval of the quarry included various studies, including a wetland delineation report, an archaeological/cultural resources review, a traffic impact analysis, and a threatened-and-endangered species analysis.  The application was placed on the agenda for the June 13, 2022 meeting of the Planning Commission.  At this meeting, public opinion was voiced in sharp opposition to the quarry.  Citizens expressed concern regarding property damage, property values, noise and air pollution, damage to historical gravesites, disruption to wildlife, and "flyrock."

A decision regarding the quarry was deferred to a meeting on July 11, 2022.  Staff

comments on the Site/Plot Application made prior to the meeting indicated that the application met all requirements under the Zoning Resolution for location, setbacks, side slopes, and drainage, and according to Kealan Millies-Lucke of the Greater Nashville Regional Council, the Site/Plot Plan was not missing additional items and met the standards of the ordinance. Hunters Point submitted expert reports addressing the public concerns raised at the previous meeting, including the location of a cemetery on the property, a Native American Stone Box grave cemetery, the use of explosives, the effect on property values, the effect on wildlife, and property damage. Hunters Point also provided evidence that the area was sparsely developed and sparsely populated, with the surrounding area having only 74 people per square mile. Hunters Point presented evidence the area would remain sparsely developed during the anticipated lifetime of the quarry and expert testimony that the possibility of "flyrock" was low. Hunters Point argued that exclusionary zoning, or zoning prohibiting all quarrying in the County, would be illegal, and it contended that the quarry could be located in any sparsely developed area within Trousdale County. Public opinion continued to be voiced in opposition to the quarry based on the potential disturbance of graves, noise and air pollution, and "flyrock."

The attorney for Trousdale County, Branden Bellar, opined that a quarry was "just not a permitted use. It's not a permitted accessory use, and on top of that, I don't think you can get there by a special exception." Mr. Bellar stated that quarrying did not "fit into A-1." Asked by a commissioner if he thought mining activities could possibly go in M-2 zones, he stated that a quarry would be "more appropriate" in an M-2 zone,[2] observing, "as far as the M-2 as written and not the specific [sic] that is before the county commission right now, it is my opinion it would be more appropriate based on the purpose maintained in that M-2 district, and if you look at the 4.120 language and the M-2 district requirements, there's a lot of mirroring or I should say similarities or like use between those two." He disagreed that mining and quarrying had been entirely excluded from Trousdale County. Commissioner David Nollner moved to deny the application, "specifically because our regulations concerning A-1 Zones do not permit it," and the Planning Commission voted to deny the application on that basis.

Hunters Point filed a petition for writ of certiorari, arguing that the Zoning Resolution permitted mining in any sparsely developed area under section 4.120. Hunters Point asserted that the Planning Commission had no discretion to deny its application and that the denial was accordingly illegal, arbitrary, capricious, and

---

[2] The M-2, intermediate-impact industrial zone, was "intended to provide areas in which the principal use of land is for manufacturing of a more objectionable nature. Heightened levels of human noise, odor, airborne pollutants, effluent, storage volume, and human-traffic as byproducts of an industry would prompt this classification." However, the M-2 zone also did not list quarrying as a permitted use or use permitted by special exception, and the M-2 zone, like A-1 zone, noted that all uses except permitted uses, accessory uses, or uses permitted by special exception were prohibited.

unsupported by any material evidence. The petition noted that "[t]he Planning Commission's sole basis, as stated by Commissioner Nollner in support of his motion, was that mining and quarrying activities are not permitted in the A-1 zoning district." The County Respondents moved for summary judgment. They argued that the determination to deny the quarry was not illegal, arbitrary, capricious, or unsupported by material evidence, relying on the fact that quarrying was not a permitted use in the A-1 zone.

The chancery court granted summary judgment to the County Respondents. The court concluded that Hunters Point could not establish the grounds for a writ of certiorari because quarrying was not a permitted use in the A-1 zone and because the Zoning Resolution stated that all non-permitted uses were strictly prohibited.

II.

Hunters Point sought a writ of certiorari, which "may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy." *See* Tenn. Code Ann. § 27-8-101. Administrative decisions regarding zoning are generally appealable through a petition for writ of certiorari. *Harding Acad. v. Metro. Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d 359, 363 (Tenn. 2007) ("Judicial review of a decision by a local board of zoning appeals, an administrative body, is obtained by filing a petition for a common law writ of certiorari."); *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990) (concluding that a decision was administrative because it executed rather than created law). Judicial review pursuant to the writ is "quite limited." *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000). Such review "empowers the courts to determine whether the local zoning board exceeded its jurisdiction; followed an unlawful procedure; acted illegally, arbitrarily, or fraudulently; or acted without material evidence to support its decision." *Id.* at 758–59. Actions that may be described as illegal, arbitrary, or fraudulent include: "1) the failure to follow the minimum standards of due process; 2) the misrepresentation or misapplication of legal standards; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards." *Harding Acad.*, 222 S.W.3d at 363. "A denial of a zoning permit which meets all the requirements of the ordinance when there is no valid ground for denial is arbitrary and unreasonable." *Id.* at 363 (quoting *Merritt v. Wilson County Bd. of Zoning App.*, 656 S.W.2d 846, 854 (Tenn. Ct. App. 1983)).

In a petition for writ of certiorari, "[o]rdinarily, once the complete record has been filed, the reviewing court may proceed to determine whether the petitioner is entitled to relief without any further motions and, if the court chooses, without a hearing." *Jeffries v. Tenn. Dep't of Correction*, 108 S.W.3d 862, 868 (Tenn. Ct. App. 2002). The trial court ordinarily reviews the record and determines if the administrative body "acted illegally,

fraudulently, arbitrarily or outside it[s] jurisdiction." *Jackson v. Tenn. Dep't of Correction*, No. W2005-02240-COA-R3-CV, 2006 WL 1547859, at *3 (Tenn. Ct. App. June 8, 2006).

Here, the County Respondents filed a motion for summary judgment. When a party has filed for summary judgment in a proceeding seeking a writ of certiorari, we review the actions under the summary judgment standard. *Cunningham v. City of Chattanooga*, No. E2008-02223-COA-R3-CV, 2009 WL 2922789, at *4 (Tenn. Ct. App. Sept. 11, 2009) (noting, when the petitioner filed a motion for summary judgment, "Procedurally, we do not review this appeal using the standards of review normally associated with common-law writs of certiorari because the issues before us are based upon a summary judgment"); *see Jeffries*, 108 S.W.3d at 868 (noting the Department's "curious tactical choice" to file a motion for summary judgment that could depend on the existence of disputed facts and concluding the party must "dance by the tune it has asked the piper to play"); *Kruger v. State*, No. W2012-00229-COA-R3-CV, 2013 WL 781135, at *7–8 (Tenn. Ct. App. Feb. 28, 2013); *Levitt v. City of Oak Ridge*, No. E2011-02732-COA-R3-CV, 2012 WL 5328248, at *8 (Tenn. Ct. App. Oct. 30, 2012) (noting that "filing a motion for summary judgment in a certiorari case is not the ordinary route chosen by most defendants").

Under Tennessee Rule of Civil Procedure 56.04, a court may grant a party summary judgment on a claim when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review an order granting summary judgment de novo, with no presumption of correctness. *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019). A party seeking summary judgment who does not bear the burden of proof at trial "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). We must "view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Huggins v. McKee*, 500 S.W.3d 360, 365 (Tenn. Ct. App. 2016). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye*, 477 S.W.3d at 250.

In this case, the parties' dispute centers around a question of law: whether the Zoning Resolution permits quarrying in the A-1 district or whether such use is prohibited. *See Harding Acad.*, 222 S.W.3d at 363. The County Respondents moved for summary

judgment, asserting that the Planning Commission "did not exceed its jurisdiction, follow an unlawful procedure, or act illegally, arbitrarily, capriciously, or fraudulently and that the Board had before it material evidence to support its decision." *See Kruger*, 2013 WL 781135, at *11–12; *Levitt*, 2018 WL 3548391, at *10. If the A-1 zone permits quarrying, then the Planning Commission acted arbitrarily and capriciously by misapplying the relevant legal standards. *See Harding Acad.*, 222 S.W.3d at 363 ("Because the basis for Metro's revocation of the demolition permits involves a question of law, we review the record de novo with no presumption of correctness given to Metro's decision to uphold the revocation of the permits."). We review this question of law de novo. *See id.*

III.

Hunters Point argues that section 4.120 permits quarrying in any district so long as the area is sparsely developed. It argues that a contrary determination renders section 4.120 a nullity. According to Hunters Point, if the Plot Plan met all requirements, the Planning Commission could not deny the application for any ground other than lack of compliance with codes or regulations related to quarrying. The County Respondents argue that the Planning Commission had a sound basis for denying the application: the explicit prohibition of non-permitted uses in the Zoning Resolution governing the Agriculture-Forestry District.

Accordingly, we examine the Planning Commission's interpretation of the Zoning Resolution. In analyzing a statute,

> the most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. To fulfill this directive, we begin with the statute's plain language. When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use. A statute is ambiguous when the parties derive different interpretations from the statutory language. However, this proposition does not mean that an ambiguity exists merely because the parties proffer different interpretations of a statute. A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute. In other words, both interpretations must be reasonable in order for an ambiguity to exist. If an ambiguity exists, however, we may reference the broader statutory scheme, the history of the legislation, or other sources to determine the statute's meaning. We avoid constructions that place one statute in conflict with another and endeavor to resolve any possible conflict between statutes to provide for a harmonious operation of the laws.

*In re Neveah M.*, 614 S.W.3d 659, 676 (Tenn. 2020) (quoting *State v. Frazier*, 558 S.W.3d 145, 152–53 (Tenn. 2018)).

Rules of statutory interpretation and canons of construction are as applicable to ordinances. *Faust v. Metro. Gov't of Nashville*, 206 S.W.3d 475, 489 (Tenn. Ct. App. 2006). "If . . . [an] ordinance lacks precision, the courts should call upon their arsenal of interpretational rules, presumptions, and aids to arrive at the ordinance's meaning and intent." *Whittemore v. Brentwood Planning Comm'n, City of Brentwood*, 835 S.W.2d 11, 15 (Tenn. Ct. App. 1992). When engaging in statutory interpretation, the court considers the whole text "so that no part will be inoperative, superfluous, void or insignificant." *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (quoting *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 228 (Tenn. 2010)). In addition, the court considers the overall statutory framework. *Id.* "When a statute's meaning is clear and unambiguous after consideration of the statutory text, the broader statutory framework, and any relevant canons of statutory construction, we 'enforce the statute as written.'" *Id.* (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)).

Here, section 4.120 gives the "Development Standards for Mining Activities and Related Services." It requires that "[t]he location of such an activity shall be in an area sparsely developed during the length of time the mining and quarrying activity is anticipated," and includes other restrictions on the proposed site.

Section 5.041, on the other hand, delineates "Specific District Regulations" for the Agriculture-Forestry District wherein Hunters Point is seeking to locate a quarry. This section states that "[t]he following regulations shall apply in the A-1, Agricultre-Forestry District," and immediately lists "Uses Permitted." Quarrying is not among these uses. The Section also lists "Accessory Uses and Structures," which likewise do not include quarrying. The Resolution also lists "Uses Permitted as Special Exceptions," which require "review and approval." Quarrying is again absent from these uses. Finally, section 5.041 lists the "Uses Prohibited": "In the A-1, Agriculture-Forestry District, all uses except those uses or their accessory uses specifically permitted or permitted upon approval as a special exception by the Board are strictly prohibited."

The Zoning Resolution expressly sets forth all permitted uses in the A-1 district with permitted uses falling in three categories (1) Uses Permitted, (2) Accessory Uses and Structures, and (3) Uses Permitted as Special Exceptions, and the Zoning Resolution bars any and all other uses in the A-1 district. Section 4.120 delineates development standards for quarrying including requiring a quarry to be in a sparsely developed area, but it does not state into what zone or zones it may be placed nor does it state that the quarry may be put into *any* sparsely developed area. On the other hand, the section that addresses the uses permitted in the Agriculture-Forestry District specifically prohibits any use which is not included in the extensive statutory list of uses which spans five pages.

"Where a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision." *State v. Welch*, 595 S.W.3d

615, 622 (Tenn. 2020) (quoting *Frazier*, 558 S.W.3d at 153); *see generally* Antonin Scalia & Bryan A. Garner, *Reading Law* 183 (2012) (addressing the General/Specific Canon).  Here, the section regulating the A-1 District purports to delineate, through an exhaustive list, what types of uses are permitted in that particular zone, and it strictly prohibits *any* other use.  We conclude that the section prohibiting quarrying in A-1 is more specific.  Given the express language, which explicitly prohibits all uses that are not specifically permitted, quarrying is not permitted in the A-1 zone.

In addition to the plain language reading of the statute, a contextual reading of the ordinance also supports the conclusion that quarrying is not permitted in the A-1 Agriculture-Forestry District.  "Courts are required to construe a statute, or set of statutes, 'so that the component parts are consistent and reasonable.'"  *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 769 (Tenn. Ct. App. 2015) (quoting *In re Sidney J.*, 313 S.W.3d 772, 775 (Tenn. 2010)).  In this case, the description of the A-1 zone notes it is "intended to preserve space for agricultural and forestry uses."  *See* Scalia & Garner 218 (noting that a prologue "can shed light on the meaning of the operative provisions that follow").  The uses permitted are generally related to agriculture, horticulture, animal husbandry, and outdoor recreation; uses requiring a special permit include community activities, small-scale commercial establishments, and feed lots and stockyards.  The context of the broader statutory framework reinforces the conclusion that quarrying, which is unrelated to agriculture, forestry, or any of the permitted uses, is not a permitted use in the A-1 zone.

Additionally, as noted above, prior to 2003, quarrying was permitted as a special exception in the M-1 District, which was "intended to provide areas in which the principal use of land is for manufacturing, processing, assembling, fabrication of materials, and warehousing or storage."  The M-1 section permitting quarrying as a special exception specifically referred to section 4.120.  When the M-1 zone was split, the description of M-1 continued to include "manufacturing, processing, assembling, fabrication of materials, and warehousing or storage," and M-2 was created to provide for "manufacturing of a more objectionable nature," including lumber and wood, salvage, automobile wrecking, and stone, clay, and glass manufacturing.  After the M-1 zone was split, quarrying was not included in any zone as a permitted use, leaving the quarrying measure as an orphaned provision.  Incongruously, Hunters Point reads the deletion of permission to quarry in M-1 as granting permission to quarry in every zone.

Hunters Point notes that the Zoning Resolution specifically prohibits non-permitted uses in every district and that quarrying is not a permitted use, accessory use, or special exception in any district.  This renders quarrying illegal.  Hunters Point observes that a total exclusion of a legitimate business is unlawful unless the zoning authority can show that the exclusion is for the purpose of promoting the health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants.  *See Robertson Cnty., Tenn. v. Browning-Ferris Indus. of Tenn., Inc.*, 799 S.W.2d 662,

666 (Tenn. Ct. App. 1990) (citing Tenn. Code Ann. § 13-7-103).

Critically, however, the issue of whether in May 2022 Trousdale County's Zoning Resolution unlawfully excluded quarrying in every district is not before us. Hunters Point did not allege such illegality in its petition nor does it make such an assertion on appeal. Rather, Hunters Point's endeavors to bootstrap the seeming illegality of the Zoning Resolution in precluding quarrying to impose a reading on the Zoning Resolution that runs contrary both to its plain language and to a contextual reading thereof. The better reading is that the Zoning Resolution seemingly improperly excluded quarrying by not allowing it any zones. To read the statute otherwise is to ignore the plain language which quite clearly delineates what uses are permitted, does not include quarrying among those, and excludes all uses that are not permitted, which includes quarrying. In any event, a determination of such illegality would conventionally result in a remand to require amending the Zoning Resolution to permit quarrying, which has already been done, placing quarrying now as a use by special exception in the M-2 District. *See Id*. at 667 (remanding for the purpose of directing the county to cure the defect in the zoning ordinance and create a zoning classification for landfills).

Hunters Point also argues that allowing the A-1 regulations to trump section 4.120 renders that section a nullity because none of the districts permit quarrying and all prohibit non-permitted uses. In advancing this argument, Hunters Point fails to grapple with the logical dissonance of its contention and the dual edged sword that it is wielding. This dissonance arises because the opposite is also true. That is, reading section A-1 to permit quarrying would render its extensive list of permitted uses and its specific prohibition against "all" other uses inoperative.

Hunters Point reads the prohibition against non-permitted uses in the subsection regulating the Agriculture-Forestry Zone as prohibiting only uses that are not permitted anywhere in the Zoning Resolution, rather than prohibiting those not permitted in A-1. Hunters Point does not explain why uses that are not permitted anywhere in the County would require a special prohibition in the Agriculture-Forestry section of the Zoning Resolution and does not explain what these uses are. It also runs contrary to Zoning Resoluition's framework of delineating all uses that are permitted within a zone and prohibiting all other uses.

IV.

Hunters Point also argues that the Planning Commission's decision was arbitrary because the true basis for the decision was either Mr. Bellar's opinion that a quarry would be "more appropriate" in M-2 zoning or an unwarranted deference to public sentiment, which Hunters Point alleges was unsupported by expert opinion.[3] The undisputed

---

[3] The County Respondents dispute the statement that there was no expert testimony, noting that

material facts establish that Mr. Bellar did state that a quarry would be "more appropriate" in an M-2 zone, but that he qualified this opinion: "as far as the M-2 as written and not the specific [sic] that is before the county commission right now, it is my opinion it would be more appropriate based on the purpose maintained in that M-2 district, and if you look at the 4.120 language and the M-2 district requirements, there's a lot of mirroring or I should say similarities or like use between those two." Likewise, the County Respondents did not dispute that public sentiment was opposed to the quarry.

However, nothing in the statement of undisputed material facts presented to the trial court with regard to the County Respondents' summary judgment motion actually asserts that the Planning Commission's determination was made on these bases. Instead, Hunters Point's statement of undisputed facts notes that Mr. Bellar testified during the meeting that quarrying was not a permitted use, a permitted accessory use, or a special exception in A-1 zones. Furthermore, Commissioner Nollner ultimately moved to deny the quarrying permit "specifically because our regulations concerning A-1 zones do not permit it." This is also the basis on which the chancery court granted summary judgment — that the Zoning Resolution prohibited any uses that were not specifically permitted in zone A-1. We conclude that Mr. Bellar's comments and the public sentiment are not germane to the trial court's decision to grant summary judgment. The trial court reached its conclusion on the basis that the language of the ordinance forbids quarrying in the A-1 zone. In other words, if the Planning Commission is correct that quarrying is not permitted under the Zoning Resolution in the A-1 zone, Mr. Bellar's opinion and that of the public are immaterial to the denial of the application. While Mr. Bellar's and the public's opinion run contrary to the quarry, what is of legal consequence in the present case is that the quarry is not permitted under the Zoning Resolution in the A-1 zone as a matter of law.

Moreover, the assertion that the decision was based on public sentiment is absent from the petition for writ of certiorari, which relies on the allegation that the stated basis for denying the petition — the exclusion of any unpermitted uses in A-1 — was arbitrary and capricious. In argument before the trial court, Hunters Point noted that "the basis is limited to the basis in the motion that they made which was tied to the legal opinion that these activities were not permitted in the A-1 district, and so that is what's on appeal essentially via this writ of cert proceeding." Likewise, in its response brief before the trial court, Hunters Point stated that the only stated basis was the conclusion that quarrying was not permitted in A-1 and that "if the Commissioners' legal conclusion on the zoning issue is incorrect, the Planning Commission does not have (or even claim to have) a basis for disapproving the Plot Plan — it is otherwise in compliance with the Zoning Resolution and must be approved. That is exactly the situation before the Court

---

attorneys testified for the nearby residents. Hunters Point notes that there was no citation to the record in disputing this fact. Resolution of this issue, or of whether expert testimony was required, is not necessary for the disposition of the case.

in this matter." Hunters Point asserted before the trial court that "because the Planning Commission identified no other basis for disapproval of the Plot Plan, and the record contains no material evidence to support disapproval on any other grounds, Petitioner was entitled to approval of the Plot Plan."

The chancery court determined that the Planning Commission's decision was not arbitrary, capricious, or without material evidence because the language of the Zoning Resolution supported the determination that quarrying was prohibited in A-1, as it was not a permitted use. *See Lafferty*, 46 S.W.3d at 759 (noting that a zoning board does not function to conduct a public referendum but that "[i]n this case, however, the Board was not simply reacting to the neighbors' complaints"). Hunters Point urges us to look through the record for evidence that the decision was motivated by public disapproval. This case is before us on a motion for summary judgment, and Hunters Point's statement of undisputed material facts before the chancery court did not assert that this was the Planning Commission's motivation.

The argument presented to the trial court between the dueling parties is legal in nature. They dueled over whether the Zoning Resolution permits quarrying in the A-1 district. That was the question placed before the chancery court. The chancery court did not err in concluding that quarrying is not permitted under the Zoning Resolution in the A-1 district.

V.

Hunters Point also argues that the chancery court's ruling was based on an incorrect legal standard, citing to a statement made by the court during the hearing that the decision should be upheld if there were "any possible reason" to support the challenged action. At the hearing, Hunters Point recited that it would have to show that the Planning Commission "acted illegally, capriciously, fraudulently or without . . . material evidence to support its decision." The chancery court noted that the summary judgment standard would apply to the motion and that the County Respondents would have to either negate an element of Hunters Point's claim or demonstrate that Hunters Point would not be able to establish an element of the claim. The court stated that there was no jurisdictional challenge, that it should consider whether the Planning Commission "acted illegal[ly], arbitrarily, or fraudulently," and that Hunters Point was relying on the actions being arbitrary or "without material evidence to support the decision." The court then made the following remark: "Under the case law cited by respondents, if any possible reason exists to justify respondent's decision, that decision must be upheld." *Compare McCallen*, 786 S.W.2d at 640 (reciting the standard for writ of certiorari to review legislative acts of a municipality as whether any possible reason could be conceived to justify the ordinance), *with Harding Acad.*, 222 S.W.3d at 363 (review pursuant to writ of certiorari for an administrative body is "limited to determining whether the board exceeded its jurisdiction, followed an unlawful procedure, acted

- 13 -

illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision"). The court invited comment from the parties, and the County Respondents noted the standard was whether the Planning Commission acted arbitrarily, capriciously, or without material evidence. Hunters Point's counsel did not respond to the trial court's phrasing of the standard of review except to agree that the summary judgment motion changed the procedural posture.

While the chancery court did use the phrase "any possible reason," it likewise recited the correct standard of whether the body acted illegally, arbitrarily, fraudulently, or without material evidence. *See McCallen*, 786 S.W.2d at 641 (observing the decision below passed muster "[u]nder either the 'illegal, arbitrary and capricious' standard of review for administrative acts or the 'fairly debatable, rational basis, any possible reason' review of legislative acts" and that the standard applied to review of legislative and administrative acts is "essentially the same"). Moreover, the court noted that the Petitioners "are relying on arbitrarily, acted without material evidence," clarifying that the court was focused on whether the Planning Commission's acts had been arbitrary or without material supporting evidence. At the hearing, the County Respondents recited the correct standard. Hunters Point did not attempt to correct the chancery court's phrasing. The chancery court found that the Planning Commission had a "sufficient basis" for its decision. We conclude that any challenge predicated upon the stray remark has been waived. Tenn. R. App. P. 36 ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

We conclude that the chancery court did not err in granting summary judgment to the County Respondents. Our resolution of this appeals turns ultimately on the legal question, which we have reviewed de novo, of whether the Zoning Resolution prohibited placing a quarry into the Agriculture-Forestry District. We conclude that it did; accordingly, we conclude that the chancery court did not err.

VI.

For these reasons, we affirm the judgment of the Chancery Court for Trousdale County. Costs of the appeal are taxed to the appellant, Hunters Point Quarry LLC, for which execution may issue if necessary.

_____
JEFFREY USMAN, JUDGE